## Harlan Gas Coal Company v. Trail, et al.

(Decided February 23, 1926.)

### Appeal from Harlan Circuit Court.

1. Master and Servant—Employee on Way to Work Held "in Course of Employment" when Attempting to Remove Dangerous Wire.— Where employee of coal company, on way to place of work, saw electric wire lying across nearby path, he was in course of his employment in attempting to remove it, since it presented danger which loyal employee would be expected to remove.

2. Master and Servant—Death of Workman Attempting to Remove Electric Wire After Warning Not Caused by "Willful Misconduct." —Where employee of coal company, on way to work, saw electric wire lying across nearby path, and was killed in attempting to remove it, though advised by fellow workmen not to touch it, held death was not caused by "willful misconduct" which is intentional doing of something, either with knowledge that it is likely to result in serious injury or with wanton and reckless disregard of its probable consequences.

A. G. PATTERSON for appellant.

HALL, LEE & SNYDER for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Jeff Trail, an employee of the Harlan Gas Coal Company, was killed by coming in contact with an electric wire. The Workmen's Compensation Board awarded his widow and children $12.00 a week for 335 weeks. On appeal to the circuit court the award was affirmed, and the employer has appealed.

Trail had been in the employ of appellant for a number of years. At the time of his death he was employed to operate the drum at the top of the incline. Appellant maintained a bath house at the foot of the hill opposite the commissary. On the morning of the accident Trail went to the bath house about six o'clock and changed his clothes preparatory to going on the hill to operate the drum. Seven o'clock was the usual time to begin this work. There were other employees at the bath house at the same time, it being their custom to change their working clothes at that place. There were two paths or routes of travel from the bath house, one leading to the right, which was the usual way of going to the drum, the other to the left, and leading to the mine foreman's residence. After Trail changed his clothes he

came out of the bath house and started as if he intended to travel the accustomed path to the top of the hill. At that time two of his fellow employees were seated on a concrete curbing nearby. When within a few feet of these employees Trail observed an electric wire lying across the path that led to the left. The wire belonged to and was maintained by the Kentucky Utilities Company, and was used for the purpose of transmitting electric current to operate appellant's mine. Trail remarked in substance that he would move the wire out of the path before someone ran into it. As he approached the wire one of the employees said, "I wouldn't pick it up," or "I wouldn't touch it; the juice might come on at any time." Thereupon Trail picked up the wire, which was charged with electricity, and was immediately killed.

There was evidence that, while Trail's son was employed to take care of the bath house some three or four months before the accident, he assisted his son in performing his duties, such as filling the boiler, making fires and keeping the premises in order. A number of witnesses testified that after Trail's son had given up the work of looking after the bath house another boy was employed to take his place, and Trail frequently assisted the latter in the performance of his duties, and the bath house key was in his pocket at the time of his death. On the other hand it was shown by appellant that Trail was employed at the time to run the drum, and that any services which he rendered about the bath house were performed without its knowledge or consent.

In finding that Trail's death was due to an accident arising out of and in the course of his employment, the Workmen's Compensation Board laid no particular stress on the evidence that Trail sometimes worked in and around the bath house, but ruled as a matter of law that an employee who temporarily steps aside from his regular employment, especially in case of an emergency, to perform some service for his master is, while so doing, protected by the Compensation Act, and this ruling was upheld by the circuit court.

Appellant insists that at the time of the accident decedent was not engaged in the performance of any duty which he was employed to perform, but was undertaking to do something wholly foreign to his employment. In the case of Young v. Mississippi River Power Company, 191 Iowa, 650, 180 N. W. 986, the Supreme Court of Iowa had under consideration a similar question. An engineer

of a pumping station charged with the duty of attending to the operation of pumps by use of electric power transmitted over the wires of the employer, a power company, was doing work for its interest in unloading a transformer when the operation caused the cross-arm on a pole carrying the company's high voltage wires to break, disturbing the wires and causing them to drop or sag. In holding that his death was an injury "arising out of and in the course of his employment," within the Workmen's Compensation Act, and in replying to the argument that he was a mere volunteer, the court said:

"If there are precedents going to the extent of the appellant's claim in this respect, we are quite sure that they have never been followed by this court, and we regard them unsound in principle and contrary to the spirit and intent of our statute. Generally speaking, the employer of labor rightfully expects from his employee something of a spirit of loyalty and a reasonable degree of care for the protection of the employer's property in or about which his services are engaged. The hired servant is something more than a mere machine or automaton, and he brings to the service of the hirer not merely a pair of hands, but hands plus brains and conscience which will forbid an honest employee to stand idly by refusing to interpose the slightest effort to save his employer from irreparable injury or loss for no better reason than that the strict letter of his contract does not require such action on his part. Such terms are rarely, if ever, expressed in the words of the agreement between employer and employee; but it is at least what, for want of a better term, we may call a moral implication in every contract of hire, and the employee, no matter what may be his rank or station or what may be the prescribed limit or range of his ordinary duties, who discovers imminent peril or calamity threatening his employer in person or property, and without stopping to debate with himself whether he will respond to the emergent call upon his manhood, at once hastens to avert the damages as best he may, is not a mere intermeddler or volunteer, and the injury to which he thus exposes himself arises out of and in the course of his employment within the meaning of the statute, and that, too, even though in the stress

of the emergency he disregards some of the general rules prescribed for the control of his conduct under normal conditions.

"Without extending this opinion to quote largely from the authorities, we cite the following in which the conclusion we here announce is distinctly upheld: Harding v. Colliery Co., 2 K. B. (Eng.) 747; Matthews v. Tile & Timber Co., 1 W. C. C. 124; F. M. Car Co. v. Commission, 168 Wis. 436, 170 N. W. 285; Dragovich v. Iron Co., 269 Ill. 478, 109 N. E. 999; State v. Brewing Co., 129 Minn. 176, 151 N. W. 912; U. S. F. Co. v. Commission, 174 Cal. 616, 163 Pac. 1013; Northern G. & E. Co. v. Pietzvak (Ind. App.), 118 N. E. 132; G. A. F. & L. v. Evans (Tex. Civ. App.), 201 S. W. 705; So. S. Co. v. Stubbs (Tex. Civ. App.), 199 S. W. 343; Rzepczynski v. Brass Co. (Sup.), 165 N. Y. Supp. 1110.

"The general doctrine is well summed up in the case of London & E. S. Co. v. Brown, 7 Sc. Sess. (5th Ser.) 488, where Lord Justice Clark says:

"'I cannot doubt that in a sudden emergency where there is danger a workman does not go out of his employment if he endeavors to prevent the danger from taking effect.'"

In the case at bar it was customary for appellant's employees to gather at the bath house and change their clothes preparatory to going to work. On the morning of the accident decedent was there for that purpose and was rightfully on the premises. In going from the bath house to his place of work he was in the course of his employment. When he saw the electric wire lying across the path he realized that its presence rendered the master's premises unsafe, and subjected his fellow employees to great danger. The situation was such that, if he failed to take steps to remove the danger and death or injury resulted, the master would naturally feel aggrieved that he had not protected his interests. In attempting to meet the emergency and remove the danger he was actuated solely by an impulse to serve his master, and did only what an old and faithful employee would be expected to do in the circumstances. We are therefore constrained to agree with the Workmen's Compensation Board and the circuit court that his death was due to an accident arising out of and in the course of his employment.

There is the further contention that decedent's death was caused by wilful misconduct. Wilful misconduct is something more than ordinary or even gross negligence. It involves conduct of a *quasi* criminal nature, the intentional doing of something either with knowledge that it is likely to result in serious injury, or with a wanton and reckless disregard of its probable consequences. In re Burns (Mass.), 105 N. E. 601, 5 N. C. C. A. 635. As the time had not arrived for the men to go to work, and as the caution given him was accompanied by the statement that the juice might come on at any time, it is evident that the decedent believed that the current was not then on, and that he acted in the hope that he might remove the danger before the current did come on. In view of these circumstances it can not be said that his death was caused by wilful misconduct on his part.

Judgment affirmed. Whole court sitting.