## Gray v. W. T. Congleton Co. et al.

(Decided April 21, 1936.)

R. W. LISANBY for appellant.

ROBERT F. VAUGHAN and GAVIN H. COCHRAN for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

Isaac Gray, a resident of Caldwell county, as an employee of the W. T. Congleton Company, a corporation, engaged in the construction of the Princeton-Dawson Highway, in May, 1933, sustained a broken leg white attempting to board a truck. Gray and the W. T. Congleton Company had accepted, and were working under, the Workmen's Compensation Act (Ky. Stats., sec. 4880 et seq.). Gray filed an application against the W. T. Congleton Company to the Workmen's Compensation Board for adjusted compensation. The board on the evidence presented by the parties denied him relief. Within twenty days thereafter he filed in the Caldwell circuit court a petition for review of the award of the board. Section 4935, Kentucky Statutes. The court, on the same evidence, sustained the board's award. Gray is here insisting that the find-

ing of the board and of the court "is not supported by the undisputed facts"; that the board and the court "erred in finding and deciding that his injury did not arise out of and in the course of his employment."

John Singleton was the acting superintendent of the W. T. Congleton Company at the time Gray was employed by the latter. He employed Gray for the company. Gray's place of work, at the time he sustained his injury, was in the country, two and a half miles from his home. He was not employed to do any particular type of work, but was at the time of his injury a "puddle mixer." At the time he was employed by Singleton for the Congleton Company, "there was nothing said about how he was to get out to his work." Gray claims that about six weeks before he sustained his injury Singleton informed him that he could go on Pickering's truck to and from the work. Singleton admits he made this statement to him. Pickering was employed by the Congleton Company to do such hauling with his truck as the company from time to time directed. About 4:30 or 5 o'clock a. m. on the 24th day of May, 1933, Gray left his home to go to his place of work on the highway, to begin the day's work. It was expected and required of him to be at the place of work at 6 o'clock a. m. and engage therein for seven hours a day, or thirty hours a week. He claims that Singleton had directed him and other employees of the Congleton Company, who generally departed together for their work at the same hour every morning, to go to the Shell Filling Station and catch a "batch truck" and it would convey them to their place of work, and that he did so and as he was attempting to get aboard the "batch truck" he fell and sustained his injury. His testimony in this respect is corroborated by a number of witnesses who claim they were present on different occasions and heard Singleton direct them to catch the "batch truck" and ride the same to the place of work. The "batch truck" he was attempting to board, at the time he was injured, was owned and operated by Wilson & Son. Alvin Gilkey, an employee of Wilson & Son, was operating it. Congleton Company had no contract whatsoever with Wilson & Son, and it is not claimed there was at any time the relation of master and servant between them. The Congleton Company employed the Colonial Supply Company to haul road material from Cedar Bluff to the cement mixer.

No other contract relation existed between Congleton Company and the Colonial Supply Company. The Colonial Supply Company had a contract with Wilson & Son to deliver for it, under its contract with the Congleton Company, sand, cement, etc., to the cement mixer. Wilson & Son had directed each driver of their trucks not to permit any one to ride on the truck under his control. At the time this direction was given to the drivers, the information was imparted to each that if he permitted any one to ride on the truck he would be discharged from the services of Wilson & Son.

Neither the Congleton Company nor Singleton had any authority over the operators and trucks of Wilson & Son. Singleton unequivocally denies that he, at any time or place, stated to Gray or any other employee of the Congleton Company to catch and ride the "batch truck," or the truck of Wilson & Son, to or from his work. The operator of the Wilson truck declared that neither Gray nor any other employee of the Congleton Company ever rode or sought to ride to or from his work on the truck operated by him; that on the morning Gray was injured he had no knowledge of his attempt to get aboard the truck or that he was injured while attempting to do so.

Thus, it is apparent there is a irreconcilable conflict in the evidence as to whether Singleton directed Gray to ride on the "batch truck" and as to whether his attempting to do so at the time of his injury was with the knowledge or consent of the operator of the Wilson & Son truck.

It becomes our duty to appraise the conflicting evidence and determine Gray's right to compensation and Congleton Company's liability to him therefor in the light of the principles applicable to, and controlling in, such case.

Generally, injuries sustained by an employee when going to or returning from his regular place of work are not deemed to arise out of and in the course of his employment, but this rule is subject to defined exceptions. W. T. Congleton Co. v. Bradley, 259 Ky. 127, 81 S. W. (2d) 912; Inland Gas Corp. v. Frazier, 246 Ky. 432, 55 S. W. (2d) 26; Turner, Day & Woolworth's Handle Co. v. Pennington, 250 Ky. 433, 63 S. W. (2d) 490; State Highway Commission v. Pennington, 250 Ky. 433, 63 S. W. (2d) 490; State Highway Commission

v. Saylor, 252 Ky. 743, 68 S. W. (2d) 26; Voehl v. Indemnity Ins. Co. of North America, 288 U. S. 162, 53 S. Ct. 380, 383, 77 L. Ed. 676, 87 A. L. R. 245. "No exact formula can be laid down which will automatically solve every case." Cudahy Packing Co. v. Parramore, 263 U. S. 418, 44 S. Ct. 153, 154, 68 L. Ed. 366, 30 A. L. R. 532. See, also, Bountiful Brick Co. v. Giles, 276 U. S. 154, 48 S. Ct. 221, 72 L. Ed. 507, 66 A. L. R. 1402. An exception is, if the employer is under obligation to transport an employee to and from work, the employee is entitled to compensation for injuries while being so transported. Githens v. Industrial Commission (Wis.) 265 N. W. 662; Rock County v. Industrial Commission, 185 Wis. 134, 200 N. W. 657; State Highway Commission v. Saylor, supra. However, this rule applies only where the duty to transport exists. This duty may arise from an express or an implied contract, although the pay of the employee may start only when he begins his work at the point of destination and ceases when he quits work for that day. And it may arise also where his wages cover the time involved or cost of transportation or both.

In the Voehl Case, the Supreme Court of the United States tersely states the exceptions to the general rule thus:

"While service on regular hours at a stated place generally begins at that place, there is always room for agreement by which the service may be taken to begin earlier or elsewhere. Service in extra hours or on special errands has an element of distinction which the employer may recognize by agreeing that such service shall commence when the employee leaves his home on the duty assigned to him and shall continue until his return. An agreement to that effect may be either express or be shown by the course of business. In such case the hazards of the journey may properly be regarded as hazards of the service, and hence within the purview of the Compensation Act."

Considering Singleton's directions to Gray to ride on Pickering's truck, it would be conceded that if at the time he sustained his injury he was attempting to board the same, authority might be found in the principles, supra, entitling him to compensation; but he was not so

injured. There is ample evidence sustaining the finding of the board, that there was no obligation on the part of the Congleton Company to transport Gray on the Wilson & Son truck, or at all, from the filling station to his place of work. The board's finding of facts on this issue is supported by competent evidence. Dunn v. Eaton, 233 Ky. 699, 26 S. W. (2d) 513; Sandlick Coal Co. v. Day, 233 Ky. 632, 26 S. W. (2d) 521. It is the accepted rule that its findings of facts is conclusive on the court where some evidence supports it. Sun Light Coal Co. v. Floyd, 233 Ky. 702, 26 S. W. (2d) 530; McCombs Coal Co. v. Alford, 234 Ky. 42, 27 S. W. (2d) 430; Harlan Gas Coal Co. v. Laws, 234 Ky. 654, 28 S. W. (2d) 990. The courts are limited in such case to determine whether the finding of the board is supported by substanital evidence, and only where the court cannot say its finding of facts was not supported by competent evidence, that its findings may be disturbed. Louisville Gas & Electric Co. v. Duncan, 235 Ky. 613, 31 S. W. (2d) 915; Black Star Coal Co. v. Collins, 236 Ky. 39, 32 S. W. (2d) 540; Consolidation Coal Co. v. Branham, 243 Ky. 780, 49 S. W. (2d) 1035. Another way to state it is, unless there is an entire absence of evidence to support the board's fact finding, it is conclusive in the absence of fraud. Kenmont Coal Co. v. Summers, 244 Ky. 232, 50 S. W. (2d) 515; Black Star Coal Co. v. Powers, 252 Ky. 736, 68 S. W. (2d) 30. In such case, the truthfulness of witnesses is for the board and not for the courts. Consolidation Coal Company's Receiver v. Scott, 253 Ky. 570, 69 S. W. (2d) 1032. Nor is it within the province of the court to weigh or judge the sufficiency of the evidence if there is any evidence of a probative or substantial nature to support the finding of the board. Raymond Contracting Co. v. Little, 255 Ky. 461, 74 S. W. (2d) 926; Three Rivers Oil Corp. v. Harper, 258 Ky. 253, 79 S. W. (2d) 972.

The board in the pending case determined on the evidence in behalf of the parties that the injury sustained by Gray did not arise out of and in the course of his employment, which was largely a question of fact, and its finding, being supported by some credible evidence, is conclusive.

This was the judgment of the circuit court, in which we concur.

The judgment is affirmed.