## Black Mountain Corporation v. Vaughn et al.

Oct. 24, 1939.

J. B. Snyder for appellant.

George R. Pope for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Andy Vaughn, an employee of the Black Mountain Corporation, was injured at the company's coal mine in Harlan county on August 30, 1937, and died on the following day. Both he and his employer had accepted the provisions of the Workmen's Compensation Act, Kentucky Statutes, Section 4880 et seq. Vaughn's widow and five infant children filed a claim for compensation with the Workmen's Compensation Board, which made an award in favor of the claimants in the sum of $12 a week for 335 weeks, not to exceed in all the sum of $4,000. A petition for review was filed in the Harlan circuit court, and that court affirmed the award of the Board. On this appeal it is insisted that there is no evidence tending to show that the accident resulting in Vaughn's death arose out of and in the course of his employment.

Vaughn was employed by the appellant as a motorman, and one of his duties was to make what is referred to in the record as a "man trip" at the close of the day's work. On the man trip the men in the mine, at the conclusion of the day's work, are transported on empty cars from the different working places in the mine to the motor barn, where the motor is detached from the empty cars and placed in a stall in the barn for the purpose of having the battery charged for the next day. The empty cars are later pushed by another motor to the head house, which is about 800 feet from the drift mouth. The workmen who are transported from their working places in the mine leave the cars at the barn and disperse to their homes. On the day the accident happened, Vaughn had transported forty or fifty men in 21 empty mine cars from their working places in the mine to the motor barn, had detached the motor from the empty cars, and had placed it in the barn. It is appellant's contention that his duties for the day ended at that point, and any injuries received by him thereafter could not have resulted from an accident arising out of and in the course of his employment. A trip of loaded cars with another motorman in charge came up and hitched to the empty cars left by Vaughn for the

purpose of pushing them to the head house. With this trip of loaded cars were the motorman, Barney Turner, and Hugh Hightower, case boss, who was Vaughn's immediate superior. Hightower got on the front empty car for the purpose of acting as "lookout man." Vaughn coupled the empty cars to the motor which was pulling the loaded cars. Whether he did this at the express direction of Hightower does not appear, but, at least, he did it with Hightower's acquiescence. He then got onto the empty car next to the front one, and later stepped into the one in which Hightower was sitting. As he sat down the car lurched and he was thrown out and was run over by one or more of the empty cars. Hightower was the only eyewitness to the accident, and when asked to describe what he saw at the time Andy Vaughn was injured said:

"Well, he pulled his man trip in at quitting time and brought it to the motor barn, and cut loose from his trip at the motor barn and put the motor in the barn and then the tram motor come out a few minutes later and I was riding the tram motor and we come down to the man trip of cars and he coupled the car up for the motorman and got in the front seat, and we had got about 200 feet from the drift mouth and was rolling along and Andy Vaughn stepped over in this car I was riding in and started to sit down by me and this tram motorman give a jerk as Andy started to sit down and he fell out under the car and one of the cars run over him."

He was later asked these questions and made these answers:

"Q. When Andy Vaughn got in did you make any objection to him getting in? A. I did not.

"Q. All right with you? A. Sure.

"Q. Rode along with you until he was thrown out of the car? A. Yes.

"Q. Andy was on his way to the head house? A. Yes.

"Q. He had just put his motor in the barn and he was trying to protect his man trip of cars? A. I don't know.

"Q. It is the duty of the motorman to protect his trip of cars? A. Don't know.

"Q. It is the duty of the motorman to protect his trip of cars? A. I cannot say that, but I reckon so."

Appellant attempted to show that it had promulgated a rule forbidding the men from boarding a car while in motion and that printed notices to that effect had been posted at the mine, and it is insisted that Vaughn willfully disobeyed this rule and that the award, at least, should be reduced fifteen per cent. as provided in Section 4910, Kentucky Statutes. There was considerable conflict in the evidence as to just what the rule was or whether it had been promulgated by the company, and, if so, whether or not Vaughn had notice of it. It appears that the rule, if one existed, merely prohibited workmen from boarding moving cars and not from riding on cars which had been boarded when not in motion. The testimony of Hightower quoted above indicates that Vaughn coupled the empty cars to the motor and then got on one of the cars before the motor started. Appellant cites other testimony of Hightower in support of its claim that Vaughn boarded the car while it was in motion, but, as we read the evidence, the witness was speaking of the time when he stepped from one car to another. There also was proof that men frequently boarded moving cars and frequently rode in empty cars to the head house. In any event, there was no evidence of a willful violation of any rule of the company, and whether or not the decedent intentionally violated any lawful or reasonable rule of the employer for the safety of the employees so as to subject claimants to the penalty of fifteen per cent. reduction of compensation, prescribed in Section 4910 of the Statutes, was a matter for the determination of the board. Stearns Coal & Lumber Company v. Smith, 231 Ky. 269, 21 S. W. (2d) 277, 278.

The evidence on disputed points was somewhat meager and in many instances conflicting, but we think a fair deduction from the evidence is that the deceased, even if he had completed his day's work, was, at the time of the accident, engaged in work for the benefit of his master either at the direction or with the acquiescence of his foreman. He was allowed thirty minutes overtime for making the man trip. After transporting the men out of the mine, it was his duty to place his motor in the motor barn. The empty cars in which the men had been transported out of the mine were always taken

to the head house and placed in what is known as the "empty hole," but whether it was the duty of the motorman in charge of the man trip to do this and then return his motor to the motor barn does not clearly appear. Vaughn, on the occasion in question, uncoupled his motor and left the empty cars at the barn. After placing his motor in the barn he coupled the empty cars to the motor in charge of Turner and got on one of the empty cars with Hightower, his superior, to ride to the head house. All of this was done with Hightower's knowledge, acquiescence, and consent, if not at his direction, and evidently it was Hightower's belief that it was Vaughn's duty to see that the empty cars were placed in the empty hole at the head house. As was said in Stearns Coal & Lumber Company v. Smith, supra:

> "Ordinarily an employee injured on the premises of the employer in going to or from work is entitled to compensation for such injuries."

Construing the evidence most favorably to appellant, and conceding that Vaughn's duties for the day ended when he placed his motor in the motor barn and that he was a volunteer when he later lent assistance in moving the empty cars to the head house, we think the accident resulting in his death arose out of and in the course of his employment, when the Compensation Act is given the liberal construction which it should receive. The facts are somewhat analogous to the facts in Harlan Gas Coal Company v. Trail, 213 Ky. 226, 280 S. W. 954; Hollenbach Co. v. Hollenbach, 181 Ky. 262, 204 S. W. 152, 13 A. L. R. 524; and A. C. Lawrence Leather Company v. Barnhill, 249 Ky. 437, 61 S. W. (2d) 1, 3, in all of which it was held that the accident arose out of and in the course of the employment. Vaughn was killed on appellant's premises while riding with his foreman in one of appellant's mine cars with the foreman's knowledge and consent. The Workmen's Compensation Board found, and there was evidence to support its finding, that Vaughn was neither willfully nor intentionally violating any safety rule of the company at the time of the accident. In A. C. Lawrence Leather Company v. Barnhill, supra, the employee was injured after the end of his day's work and while he was preparing to leave his employer's premises. He went to and from his work in his automobile, and had parked it in a space used by the employees for that purpose. After he completed his day's work he went to his car but couldn't start it, and

went to the car of a fellow employee, which was parked fifty or seventy-five feet away, to procure a crank. He started back to his own car, but instead of walking along the driveway provided for the use of the employees, he left it and took a short cut. Before he reached his own car he fell and broke his leg. The Workmen's Compensation Board awarded him compensation, and the judgment of the circuit court approving the award was affirmed. In the course of the opinion this court said:

"An employee on the master's premises, to begin, or to engage in, his work, or at the close of the day's work in leaving the premises, is, within the meaning of the compensation act, in the course of his employment. The going to and returning from work is not limited by the exact time he reaches the scene of his labor and begins work, or when he ceases it, but includes a reasonable time, space, or opportunity, both before and after, while he is at or near his place of employment. This is the general accepted rule. Barres v. Watterson Hotel Company, 196 Ky. 100, 244 S. W. 308; Big Elkhorn Coal Company v. Burke et al., 206 Ky. 489, 267 S. W. 142. And, while so engaged, he may do what a reasonable person might do under similar circumstances, without going outside of his employment; though not strictly in line of duty. Warfield Natural Gas Company v. Muncy, 244 Ky. 213, 50 S. W. (2d) 543. An injury sustained in the performance of such acts is, within the contemplation of the law, an injury arising in the course of his employment, and entitles the employee to adjusted compensation, the same as if the injury was sustained while otherwise engaged in the actual discharge of his services, on the premises of the master."

The rule announced in the Barnhill case is applicable here, and the judgment is affirmed.