## Draper v. Railway Accessories Co. et al.

Oct. 16, 1945.

598

Charles Leibson for appellant.

Davis, Boehl, Viser & Marcus for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming.

Appeal from a judgment upholding a Board finding adverse to appellant's claim for compensation. At the time of the injury, August 15, 1937, appellee was engaged under contract with the L. & N. Railroad to dismantle and destroy obsolete cars, salvaging the metal. The accident occurred around 2 o'clock in the afternoon, Draper being struck by an engine of the railroad company while he was on a main switch track. He suffered such injury that it was necessary to amputate both legs. It is stipulated that parties were subject to our compensation law, and that Draper's wages were sufficient to justify maximum compensation for total, permanent disability.

Draper, an uneducated colored man, competent in his line of work, was about thirty-one years of age at the time of the injury. He had worked for appellee many years in various places in and out of Kentucky, and had begun this job about twelve days before the accident. His eight hour a day job consisted in operating a press which was used to prize car wheels from the axles. As we view the record the dispute is as to whether Draper was injured while on the premises set aside to appellee for its purposes.

It appears that following his injury Draper filed application with the Board, and actions against the L. & N., both in Kentucky and in the St. Louis (Mo.) circuit court. The latter case went to trial and the jury returned a sizeable verdict for plaintiff. On appeal the Supreme Court of Missouri reversed on the ground that plaintiff had not shown negligence. Draper v. Louisville & N. R. Co. 348 Mo. 886, 156 S. W. 2d 626. By agreement of parties the compensation hearing stood in abeyance until after conclusion of the common law action.

The case was first heard by a referee, who upon proof concluded that the accident occurred after Draper had left the premises and was not at the time engaged in any business of his employer; upon the authority of Gray v. W. T. Congleton Co., 263 Ky. 716, 93 S. W. 2d 829; Inland Gas Corporation v. Frazier, 246 Ky. 432, 55 S. W. 2d 26; and State Highway Comm. v. Saylor, 252 Ky. 743, 68 S. W. 2d 26, 28, he held that the injury did not arise out of and in the course of employment. The Board agreed.

The Referee and the Board made detailed statements of facts, and we adopt portions of the latter's findings, since there is little dispute as to physical facts upon which the conclusions turned. It was shown that Draper had the task of pressing the wheels from the axles of obsolete cars; these were salvaged and passed to the ownership of appellees. This work was being done on a certain set of side tracks, admittedly located in Strawberry Yard of the L. & N., connected by main switch tracks with its South Louisville yards. Located at a point along these connecting tracks is a scale house, used by the L. & N. to weigh the salvaged metal. This weighing was done by the L. & N. employees, the weights checked by Ryan, appellee's superintendent, and Draper had no part in the weighing. The scale house is frequently mentioned in the proof, because it was near this point that Draper received his injury.

The scale house, which was located on the main switch track between the two yards, was a distance of about 1,500 feet from Draper's working place. The switch point where it joined the tracks set apart for dismantling purposes is about 408 feet south of the scale house. These distances were deemed of importance as bearing on the question as to whether the scale house, or the point where Draper was injured, were or were not within the limits of Strawberry Yards or Draper's working place. While Draper insists he was injured in Strawberry Yards there is proof that the yards ended at a considerable distance south of the scale house. Draper was boarding at a house some distance from his working place. He could reach it by one of two routes. He could walk the tracks to the street upon which he lived, thence to the home, a distance of about 4,600 feet, or he could follow a cinder path to Ashbottom Road, thence to the home on Wabasso Street, a distance of 5,446 feet.

On the occasion of his injury, as he said he had been doing during his twelve days of work, he, without direction of anyone, chose the shorter route, north by way of the railroad track.

On the day of the injury Draper, who had begun work at 5 a. m., finished his task about 1:30 p. m. He left his working place, and started northward toward his home. A short distance from the tracks where he had been removing wheels, he voluntarily stopped to assist Ryan, who was engaged in burning cars. He says he helped him about five minutes; Ryan fixes the period at from fifteen to twenty minutes. Draper then continued towards his home, stopping at a tool house, south of the scale house and changed his clothes. He then proceeded on the track for some distance when the engine, approaching from his rear, struck him. His evidence shows that he did not know whether he was struck at a point north or south of the scale house. At one time he fixed the point 50 feet north; at another time 50 feet south. Ryan, though he did not see the accident, fixes the point of impact at from 5 to 15 feet north of the scale house. During the hearing before the Board it was agreed that the accident "happened 200 feet from Strawberry Lane, which crosses Strawberry Yards of the L. & N. as he walked towards Strawberry Lane." This description as it stands is indefinite, and the Board, as we have had to do, referred to the map introduced and undisputed as to points and distances. The Board found as a matter of proof that the map shows that Strawberry Lane runs north of the scale house, and far north of the place assigned to appellee. After crossing the railroad tracks the lane runs to the south and parallel with the tracks. The Board found, according to the stipulation, that Draper was injured 50 feet north or south of the scale house, 200 feet south of Strawberry Lane.

There was an effort to show that notwithstanding the situation mentioned, the scale house was a part of the area assigned to appellees, because the salvaged metal was there weighed by the railroad company, and the weights checked by Ryan. The Board found against this claim, finding also that Draper had no sort of connection with the weighing or checking. The Board concluded with the statement, which is clear from the proof, that "Draper had finished his work and was on his way home by the only route he knew, but it has been clearly

shown that there were other routes he could have taken if he so desired.'' The Board concluded that it was agreed that Draper was not in performance of his assigned work, or any work for appellee, and found that he was not on the premises when he was injured, but injured on the track north or south of the scale house when there were other available routes to his home; that the employer was under no duty to transport him to and from his home. Upon this finding of the facts, supported by sufficient proof to justify it, the Board dismissed the petition, citing as persuasive authorities, Inland Gas Corporation v. Frazier, 246 Ky. 432 55 S. W. 2d 26; Gray v. W. T. Congleton Co. 263 Ky. 716, 93 S. W. 2d 829; State Highway Comm. v. Saylor, 252 Ky. 743, 68 S. W. 2d 26, to which may be added Billiter, Miller & McClure v. Hickman, 247 Ky. 211, 56 S. W. 2d 1003, and the recent case of Harbison-Walker Refractories Co. v. Brown, 296 Ky. 629, 178 S. W. 2d 39. In the last named case we reversed the Board's finding, nothwithstanding Brown was killed while on the master's premises. This and other of our rulings comport with what is called the ''going and coming'' rule. Schneider's Workmen's Compensation Law, Vol. 6, Supp. p. 1264, states it thus:

''The basis of the 'going and coming' rule, is that, though broadly speaking the injury is incidental to the employment, compensation under the Act is dependent upon the fact that the employee is engaged in some service growing out of his employment, and that an employee in merely coming to or going from his work is not rendering any such service. He is exposed to risk, not as an employee, but rather as a member of the general public and the Act is not intended to compensate for injuries resulting from such risks.''

The author then notes exceptions to the rule and suggests as we have frequently held, that each case must be judged by the particular facts. ''Thus an injury to an employee while he is using the sole means of access to the place of employment is compensable, although such means are not on the employer's premises; * * * likewise, the courts recognize that in coming to or going from his place of employment the employee may be on some substantial mission growing out of his employment which is the major factor in his journey.'' In such case he comes within the protection of the Act. Further

exceptions noted are where the employer furnishes to the employee transportation to and from his work, either by way of special vehicle or transportation on a public vehicle. Where transportation is given the employee merely as an accommodation to which he is not entitled as a matter of right, an injury occurring while coming or going from his work is not compensable. (Cases cited in Schneider.) These distinctions "establish the dividing line in putting on an industry the burden of injuries directly incidental to it." On both the rule and exception the author supplies numerous authorities. Our court has not gone as far in allowing some of the exceptions, as may be noted from cited cases.

This leads us to note the contention of appellant that the injury, according to some proof, occurred on a portion of the premises set apart to appellee, or upon the "general premises," because the scale house and the tracks connecting the two yards constituted the general premises. Counsel cite Big Elkhorn Coal Co. v. Burke, 206 Ky. 489, 267 S. W. 142; Wilson Berger Coal Co. v. Brown, 223 Ky. 183, 3 S. W. 2d 199; Stearns Coal & Lumber Co. v. Smith, 231 Ky. 269, 21 S. W. 2d 277, and several cases from other jurisdictions, some of which perhaps extend the exception rule further than has been done by this court and all distinguishable on facts from the instant case, our cases adhering to what appears to be the general and exceptions rules. In the first named case the employee was leaving his place of work in the mine, riding to the entry on a coal car. He was still on the premises, and using a conveyance furnished by the employer to transport him to and from the mine entrance. Barres v. Watterson Hotel Co., 196 Ky. 100, 244 S. W. 308. In the Wilson-Berger case the employee was injured by stumbling over a stone in a roadway on the employer's premises, the roadway having been built by the employer for the convenience of employees. In the Stearns case the proof was that the injured miner was on the employer's premises and making preparations incidental to his going to work. We have examined the foreign cases cited, and find that they may be distinguished, and this applies to perhaps the strongest case cited by appellant, Bales v. Service Club No. 1, Camp Chaffee, Ark., 187 S. W. 2d 321, 326, where the court held the employee entitled to compensation for an injury received when on the sidewalk and about to enter the building

where she was employed. The Board under the facts shown held that the sidewalk was to "a limited degree, and purpose, a part of the [employer's] premises."

A reading of many opinions of this court (and others) will demonstrate that an injury occurring while the employee is on the premises does not ipso facto fasten liability on the employer. There must be a combination of circumstances to bring the applicant within the beneficial provisions of the law. The injury must have arisen "out of and in the course of" the employment. The first words refer to the cause, and the second to the time, place and circumstances of the accident. Meem-Haskins Coal Corp. v. Bach, 278 Ky. 535, 128 S. W. 2d 913. If the accident occurred while the servant was performing the service for which he was employed, the injury arises out of the employment. If the accident occurred within a reasonable time before or after the actual work, and in preparation for departure from the service and the thing done was to the interest of the master or an integral part of the preparation, the injury is held to have been received in the course of employment. Harbison-Brown case, supra, and cases cited.

The record shows that there were other routes by which Draper could have reached his home, but he chose to take the shorter route; this could not be said to be for the benefit of anyone save himself, and the injury resulting did not arise out of or in the course of his employment. We join the Board in expressing regret that under the facts we are compelled to so hold, but as we have so frequently said, the employer is not to be treated as an all-coverage insurer, and the Board and the courts must follow the law as it has been construed.

Judgment affirmed.