HARLAN–WALLINS COAL CORPORATION, Appellant,

v.

George STEWART et al., Appellees.

Court of Appeals of Kentucky.

Feb. 25, 1955.

used the highway instead. Stewart was several hundred feet from the mine opening when he fell. Ordinarily, he rode to work in a car, but he said he was walking on the occasion in question because the car was broken down. When asked what made him fall, Stewart said: "I just slipped and fell on the ice accidentally; I don't guess I would know what made me fall, my feet flew from under me."

■ A majority of the members of the Court are of the opinion that the position of the appellant is well taken and that the judgment should be reversed. It is their view that the opinion in the case of Harlan Collieries Company v. Shell, Ky., 239 S.W. 2d 923, is controlling here. In that case we said that the approach to a problem such as the one under consideration should be made from the point of view of an exposure to an industrial hazard; and also that the employee is in essence insured against losses arising from the perils of his work. We said further that the compensation law covers an occupational injury, and that it must have some causative connection with something peculiar to the employment.

In the Shell opinion we discussed the case of Wilson Berger Coal Company v. Brown, 223 Ky. 183, 3 S.W.2d 199, upon which the Compensation Board based its award, and also the case of A. C. Lawrence Leather Company v. Barnhill, 249 Ky. 437, 61 S.W.2d 1, upon which the trial court based his opinion upholding the Board's award. The Brown case was approached primarily from the point of view of place, the injury having occurred when the employee fell over a stone in a pathway on the employer's property. In the Barnhill case the employee sustained an injury shortly after he left work, and in a place on the employer's property where employees parked their cars.

■ A majority of the members of the Court are still of the opinion that the Shell case presents a sounder approach to the question than would result from its con-

James Sampson and Edward G. Hill, Harlan, for appellant.

George R. Pope, Harlan, for appellees.

CAMMACK, Justice.

This is an appeal from a judgment approving an award of compensation to George Stewart for a complicated fracture of his left wrist, sustained when he fell on ice on his way home from work in one of the appellant's mines. The appellant is urging that the judgment be reversed because Stewart's injury did not arise out of and in the course of his employment.

At the time Stewart fell, all of the ground in the vicinity of the mine was covered with snow and ice. When he came out of the mine, he left his lamp at the lamp house and started walking home along the gravel on the edge of the highway. The highway was on the appellant's property, but it was used by the general public. The appellant had provided a walkway for its employees, but some of them

sideration in terms of time, or place, or both. Because of the icy condition prevailing throughout the vicinity of the appellant's mine at the time Stewart sustained his injury, all persons traveling on foot were exposed to the same hazards as was he. According to his own testimony, he slipped on the ice and accidentally fell. Furthermore, we think it is for the Legislature and not the courts to determine the policy of whether the Compensation Law, KRS 342.001 et seq., should cover workers when going to and from work on the premises of their employers.

Judgment reversed, with directions that the case be remanded to the Workmen's Compensation Board for the entry of an order consistent with this opinion. Judges MILLIKEN and MONTGOMERY, dissenting. Judge HOGG, not sitting.

.MILLIKEN, Justice (dissenting).

The view of the majority of the court is contrary to the weight of authority and to the modern trend in Workmen's Compensation law, and is apparently based on the doctrine of stare decisis as applied to Kentucky cases in this field. Whether stare decisis should apply in this field of the law is one question, but whether this court has a sound basis for its application is quite another. This dissent. is addressed to the latter question, and, I believe, throws into high doubt whether Kentucky law is as well settled in this field as the majority opinion assumes that it is.

We have often held that injuries which occur to an employee on the employer's premises while going to and leaving work do occur "in the course of" the employment. Louisville & N. R. Co. v. Walker's Adm'r, 162 Ky. 209, 172 S.W. 517; Phil Hollenbach Co. v. Hollenbach, 181 Ky. 262, 204 S.W. 152, 13 A.L.R. 524; Barres v. Watterson Hotel Co., 196 Ky. 100, 244 S.W. 308; Big Elkhorn Coal Co. v. Burke, 206 Ky. 489, 267 S.W. 142; Harlan Gas Coal Co. v. Trail, 213 Ky. 226, 280 S.W. 954; Black Mountain Corp. v. Vaughn, 280 Ky. 271, 132 S.W.2d 938.

Usually accidents which occur to an employee going to and from his work are not compensable, the chief exception being accidents which occur to the employee on the employer's premises before and after the actual work of the day. 49 A.L.R. 426. Where an employee, who was washing himself preparatory to going home at the end of his day's work, touched a live wire in the employer's workroom, the requirement of causation—that the accident arise out of the employment—was satisfied on the ground that it was one of the "inherent dangers" of the employment. Phil Hollenbach Co. v. Hollenbach, 181 Ky. 262, 204 S.W. 152, 13 A.L.R. 524.

In A. C. Lawrence Leather Co. v. Barnhill, 249 Ky. 437, 61 S.W.2d 1, 3, where an employee suffered a dizzy spell immediately after work while on the employer's premises, fell and broke his leg, we allowed compensation, saying:

"An employee on the master's premises, to begin, or to engage in, his work, or at the close of the day's work in leaving the premises, is, within the meaning of the compensation act, in the course of his employment. The going to and returning from work is not limited by the exact time he reaches the scene of his labor and begins work, or when he ceases it, but includes a reasonable time, space, or opportunity, both before and after, while he is at or near his place of employment. This is the general accepted rule. * * * And, while so engaged, he may do what a reasonable person might do under similar circumstances, without going outside of his employment, though not strictly in line of duty. * * * An injury sustained in the performance of such acts is, within the contemplation of the law, an injury arising in the course of his employment, and entitles the employee to adjusted compensation, the same as if the injury was sustained while otherwise engaged in the actual discharge of his services, on the premises of the master."

To the same effect, see Black Mountain Corp. v. Vaughn, 280 Ky. 271, 132 S.W. 2d 938.

Wherever it has appeared even remotely reasonable, the court seems to have favored the award of compensation in accidents on the employer's premises when the employee was on his way to or from the productive phase of his work. For example, in Harlan Gas Coal Co. v. Trail, 213 Ky. 226, 280 S.W. 954, 956, an employee who was on his way from the bathhouse to the mine picked up a live wire and was electrocuted, and we allowed compensation on the ground that "he was actuated solely * * * to serve his master, and did only what an old and faithful employee would be expected to do * * *." And, in Stearns Coal & Lumber Co. v. Smith, 231 Ky. 269, 21 S.W.2d 277, 278, where an employee violated a company regulation and attempted to board a company car in order to get the motorman to carry his lunch into the mine for him, we nevertheless allowed compensation, commenting "he [the miner] was not doing an act wholly for his own benefit, but one which was necessary to enable him to perform his duties properly, and hence was an act designed to promote the work of his employer."

We have allowed compensation even when the employee was injured off the premises on his way to or from work. In Louisville & Jefferson County Air Board v. Riddle, 301 Ky. 100, 190 S.W.2d 1009, 1011, in an opinion by Chief Justice Sims, we allowed compensation to the night custodian of the airport who suffered injuries when struck by an automobile while crossing a public highway adjacent to the airport a few minutes before beginning work thereat after inspecting warning lights maintained by the airboard on tops of electric light poles along the road outside of the base as was his duty and custom, saying:

"So, when as a practical matter the employer's premises are extended to include obstacle lights on the south side of the public road, it follows that the injuries to Riddle arose out of and in the course of his employment."

See, also, Turner Day & Woolworth Handle Co. v. Pennington, 250 Ky. 433, 63 S. W.2d 490.

Probably the best generalization of the holdings in these cases came in our opinion in Wilson Berger Coal Co. v. Brown, 223 Ky. 183, 3 S.W.2d 199, 200, where we said:

"There can be no doubt that an employee, while going to, or returning from, his place of work along a road leading over his employer's premises, and built and intended for his use, is still in the course of his employment, and if he is injured while so traveling, the accident is one arising out of and in the course of his employment."

With this as our general rule, we find many of our decisions refusing to apply it for one reason or another. In Draper v. Railway Accessories Co., 300 Ky. 597, 189 S.W.2d 934, where an employee was struck by a switch engine on the employer's premises while on the way home from his work, and there were other routes by which the employee could have gone home with greater safety, we refused to allow compensation. In Miracle v. Harlan Wallins Coal Corp., 311 Ky. 169, 223 S.W.2d 738, we sustained the Workmen's Compensation Board in its refusal to allow compensation where an employee on his way home across the employer's premises was run over by a pony; our decision was based on the Board's finding that the roadway which the employee was traversing was a public highway and not a private roadway belonging to the employer. In January-Wood Co. v. Schumaker, 231 Ky. 705, 22 S.W.2d 117, where an employee was killed by a personal enemy while at work on his employer's premises, we refused compensation. In Lexington Ry. System v. True, 276 Ky. 446, 124 S.W.2d 467, 468, where a streetcar motorman was accidentally killed by a stray bullet from the gun of a third person, we refused compensation, declaring: "The injury must be incidental to the nature of the employment. If the injury oc-

curred by reason of some cause having no relation to the employment, it cannot be said to 'arise out of the employment'." In another case, where an employee was gathering wood on his employer's premises for his own benefit an hour or more after he had finished work, we refused compensation. Harbison-Walker Refractories Co. v. Brown, 296 Ky. 629, 178 S.W.2d 39. And in our more recent case of Harlan Collieries v. Shell, Ky., 239 S.W.2d 923, where an employee was injured because of the defective brakes of an automobile of a third person in which he was riding while leaving the employer's premises after the day's work, we refused compensation.

In all of the cases summarized in which compensation was refused, it is apparent that the court considered the chain of causation between the employment and the injury to have been broken either by an act of the employee or by the independent act of a third person not connected with the employer; in other words, the injury did not arise out of the employment. In all of the cases summarized in which compensation was allowed, it is apparent that the court necessarily found a causal connection between the injury and the employment; in other words, the injury arose out of the employment.

After finding the causal connection to exist, it became necessary to stretch the concept "in the course of the employment" in order to grant an award of compensation, for the injuries must "arise out of" and occur "in the course of" the employment in order to be compensable. "In the course of the employment" as used in these cases is clearly not based on the traditional tests of the employment relation for respondeat superior or other purposes. Despite our efforts to ascribe a benefit to the employer in a few of our opinions such as Harlan Gas Coal Co. v. Trail and Stearns Coal & Lumber Co. v. Smith, above, for example, the true explanation of the premises rule and the many exceptions to it is, in the words of Lawson's Workmen's Compensation Law, page 201:

"Since it is so obvious that a causal relation exists between the work and the hazard, the always ill-fitting course of employment concept has got to be stretched at least far enough to prevent the injustice of denying compensation for an injury admittedly caused by the employment. We have, then, a workable explanation of the exception to the premises rule: it is not nearness, or reasonable distance, or even the identifying of surrounding areas with the premises; it is simply that, when a court has satisfied itself that there is a distinct 'arising out of' or causal connection between the conditions under which claimant must approach and leave the premises and the occurrence of the injury, it may hold that the course of employment extends as far as those conditions extend."

In the case at bar, the Board found that Stewart had chosen the path on which to walk because trucks had made the private roadway too slick, and because the path was a shorter route which was used frequently by the employees and known by the employer to be so used. In such circumstances, the employee was on a portion of the premises where he was privileged to be, at a time when he was privileged to be there, and would not have been there except for the fact that he was an employee of the company. His presence there was an incident of his employment. Although the snow and ice covering the whole community was a hazard to which the traveling public generally was exposed, Stewart's exposure to it at the particular time and place of his injury was caused by his employment.

In fairness to my colleagues I confess that I once too held their view, but changed my mind when an opportunity was afforded me to go into the question more thoroughly than the heavy docket of this court usually permits one to do. In any event, the General Assembly has the power to clarify the statutory law and to supply the court a standard to go by in these cases.

Judge MONTGOMERY joins me in this dissent.