John MADDOX, Appellant,

v.

**HEAVEN HILL DISTILLERIES, INC.,**
Appellee.

Court of Appeals of Kentucky.

Nov. 13, 1959.

John P. Sandidge, John A. Fulton, Louisville, for appellant.

Gavin Cochran, Peter, Heyburn & Marshall, Louisville, for appellee.

MOREMEN, Judge.

This is an appeal of a workmen's compensation case in which the injured employee was denied compensation by the board on the ground that the accident did not arise out of and in the course of his employment. An appeal to the circuit court was dismissed.

Appellant, John Maddox, had been an employee of appellee, Heaven Hill Distilleries, Inc., for more than eight years when he was struck by an automobile while crossing on foot public highway #49 in Nelson County.

The main portion of the distillery's property is situated on the east side of highway #49. There, are located the stillhouse, warehouses, government office, guardhouse and similar buildings. Across the highway, on the west side of the road, is a parking lot maintained by the company for the convenience of its employees. There, too, apparently is a warehouse owned by the company, but we learn from the photo-

graphs filed that it is not readily accessible to the parking lot and has no connection with it.

On the date of his injury, appellant, who was a fireman, parked his car in the lot on the west side of the highway, crossed the road, and "punched his card" at 7:47 a. m. He worked through his shift and punched out at 4:02 p. m. Maddox, with fellow employees, went to the shower room, bathed and changed clothes as was his custom. This seems to have consumed about an hour. He then left the premises, either by the main gate or by the guard-house door, walked out into the highway and toward the parking lot. He testified:

"Well, as I was starting across the road there was a car that pulled off the lot, going up the hill, and there was another one coming down the hill and it had me blinded off from it, I turned around—the guard said something to me—and I turned to answer him and to see what, and in the meantime I heard this car coming down the hill, so I was almost across the road and as I aimed to run out of the way he struck me, right on the—right on the edge of the road."

Appellant argues that although he had completed his work, he was still under the control of the guard and since he was injured while leaving the plant's entrance and proceeding to a parking lot owned by the employer he was still in the course of his employment. It is not argued that the accident arose "out of" his employment.

Appellant's attorneys candidly admit in their brief that the question of whether he was under the guard's control was not presented to the board except by indirection, that the board made no finding in connection with it. Our examination of the record fails to disclose that Maddox was under his control and the guard himself states that he did not know of the accident until he heard the sound of the collision. (It sounded as it does when you hit a piece of pasteboard in the road.) The man was a night guard and his duties seemed to be similar to those of any regular night watchman.

Appellant cites several cases from other jurisdictions which hold that where an employee travels along or across a public road between two portions of his employer's premises and in pursuit of his active duty, compensation may be awarded if he is injured—but that is not the case here, because Maddox had ceased pursuit of his active duties as an employee.

Our attention is also invited to the case of McCrae v. Eastern Aircraft, 137 N.J.L. 244, 59 A.2d 376, 377. There the employer's plant was located on two sides of a public highway with parking lots on each side. In that case: "The employer provides a traffic officer whose duties are to direct traffic of motor vehicles and to provide for the safe crossing of its employees. This officer was stationed in the center of the public highway between the two gates, and was on duty at the time of the accident." The opinion affirms the general rule that injuries sustained by employees going to or returning from a regular place of work do not arise out of and in the course of employment, but it points out that under the circumstances of this particular employment and because the employer had assumed control of the highway, the exception to the rule would be applied. It is apparent that similar facts are not presented here and we do not indicate that the same rule would be applied if they were presented.

The question of "going and coming" has been before us on many occasions and our opinions about it are often difficult to reconcile. This result may have obtained from the fact that we used as a starting point the expression that the liability of the employer results from a "personal injury sustained by the employe by accident * * * arising out of and in the course of his employment." KRS 342.005(1).

We have split the expression in two parts and have given separate definitions

for each one. In application, if either element is missing, compensation is denied.

We have held (Harlan Collieries Co. v. Shell, Ky., 239 S.W.2d 923, 925), that the phrase "arising out of" refers to the cause of the accident, that is, there must be a causal relationship between the accident and the employment. In January-Wood Co. v. Schumacher, 231 Ky. 705, 22 S.W.2d 117, 119, it was said: "The cause must have had its origin in a risk connected with the employment and the injury have flowed from that source as a rational consequence." Sometimes it is said the injury must be "work-connected." Clear Fork Coal Co. v. Roberts, Ky., 279 S.W.2d 797.

The words, "in the course of," pose the question of whether the accident was work-connected with regard to time, place and circumstances. Harlan Collieries v. Shell, Ky., 239 S.W.2d 923, and Clear Fork Coal Company v. Roberts, Ky., 279 S.W. 2d 797.

When we test the facts of the instant case by our definition of "arising out of" we find that this injury did not result from a risk connected with Maddox' employment because all persons using public highways are exposed to the same hazard. It did not result from a danger peculiar to the distilling industry. We recognize that this rule has been criticized as being unsound. Lawson's Workmen's Compensation Law, and the authoritative dissenting opinion in Harlan-Wallins Coal Corporation v. Stewart, Ky., 275 S.W.2d 912. However, in both the opinion and the dissenting opinion in that case it was suggested that the legislature and not the court should extend the coverage of the Act, if such action was desirable.

When we test the facts of this case by our definition of "in the course of" phrase, we find that it too is not satisfied. Here, also, our rule is restricted. In Lawson's Workmen's Compensation Law, page 95, it is said:

"The course of employment is not confined to the actual manipulation of the tools of the work, nor to the exact hours of work. On the other hand, while admittedly the employment is the cause of the workman's journey between his home and the factory, it is generally taken for granted that workmen's compensation was not intended to protect him against all the perils of that journey. Between these two extremes, a compromise on the subject of going to and from work has been arrived at, largely by case law, with a surprising degree of unanimity: going to and from work is covered *on the employer's premises*.

"Whenever an arbitrary line is drawn, its artificiality is certain to expose it to attack whenever close cases arise. * * "

Our rule is restricted because it is not as liberal as that which is generally applied. In many of our cases, the going and coming rule is not applied even though the accident occurred on the employer's premises. In the cases of: Harlan-Wallins Coal Corp. v. Stewart, Ky., 275 S.W.2d 912, and United States Steel Co. v. Isbell, Ky., 275 S.W.2d 917, compensation was denied even though the employee was on the premises and was en route to his station of duty. In Clear Fork Coal Co. v. Roberts, Ky., 279 S.W.2d 797, the employee was on the premises; he had gone to the bath house for the purpose of changing his clothes and obtaining his mining lamp. The bath house was some distance from the mine tipple. A fellow employee gave him a ride in his truck which ran off the road and the employee was injured. There, we held that the employee had picked up the tools of his work and, in effect, had begun the duties of his employment; therefore, he was covered.

In recent years, we have apparently decided the cases solely on the question of whether the employee had begun to perform the duties required of him or had ceased to perform them. The question of whether he was on the employer's premises or near them was given little consideration.

Two later cases on this subject are: Barker v. Eblen Coal Co., Ky., 276 S.W. 2d 448, and Johnson Bros. Lumber Co. v. Hood, Ky., 330 S.W.2d 929. In the latter case, which is similar in fact to the former one, the employee parked his car on the employer's premises and began walking downgrade to a sawmill where he planned to work. In some unexplained manner, the automobile rolled down the grade and the employee was struck and killed. Compensation was denied.

In Miracle v. Harlan Wallins Coal Corp., 311 Ky. 169, 223 S.W.2d 738, this court affirmed the decision of the compensation board that where an employee was injured on a public roadway on his way home from work and was performing no special duty for his employer which would require his presence at the place of the accident, the injuries he received by being run over by a pony were not compensable as being sustained in the course of his employment.

We are of opinion that the board and the circuit court were correct in their decision and the judgment is therefore affirmed.