**Ruth Coleman RATLIFF, Appellant,**

**v.**

**James E. EPLING, Jr., and Bill Coleman, d/b/a C & E Coal Company, et al., Appellees.**

Court of Appeals of Kentucky.

March 25, 1966.

Dan Jack Combs, Ronald W. May, Pikeville, for appellant.

Baird & Hays, Pikeville, for appellees.

CLAY, Commissioner.

Appellant is seeking workmen's compensation death benefits. The Board found the employee's death did not arise out of and in the course of his employment. This order was confirmed by the circuit court. The case has been before us earlier on a procedural question. Epling v. Ratliff, Ky., 364 S.W.2d 327. A related case is Ratliff v. Big Sandy, Ky., 389 S.W.2d 911, wherein the facts are detailed.

The deceased was a coal miner and his employer was engaged in a deep mining operation. The employer's lease encompassed a substantial area west of the drift mouth where the employee worked. This area had been auger-mined by another company not here involved. The auger

mining had created a "high-wall", ranging from 18 to 25 feet in height, above a shelf along which a roadway extended to the drift mouth. This roadway was customarily used by employees going to and from their work there. (Apparently it was the only means of ingress and egress.) It was not well-defined but the route extended generally along the shelf, which had substantial width.

The employee had quit work for the day. He planned to ride home with a fellow employee whose car was parked near the drift mouth. The car would not start. While the driver went to secure assistance, the employee took a box and expressed the intention of gathering loose coal, for his personal use, along the face of the "high-wall". When he was about 173 feet from the drift mouth this embankment caved in upon him, causing his death. The accident happened approximately one-half hour after he had quit work.

Appellant contends the employee was on his employer's premises and that since the accident happened within a reasonable time after quitting work, while he was on his way home, it should be held that he was still in the course of his employment. We are confronted with two very serious problems involving the application of the "Going and Coming" rule and the matter of "Deviation" from the course of employment.

■ The "Going and Coming" rule involves the question of whether or not, and under what conditions, an employee is covered by workmen's compensation when on his way to or from the place where he actually performs the duties connected with his employment. This problem has vexed the courts for years and it must be conceded that governing principles have not been consistently applied by our Kentucky cases. It may be generally stated that (in the absence of the performance of some employment duties) the employee is *not* covered if he is not on the premises

of the employer. See Larson's Workmen's Compensation Law, Vol. 1, section 15.00 (page 195). State Highway Commission v. Saylor, 252 Ky. 743, 68 S.W.2d 26; Scott Tobacco Co. v. Cooper, 258 Ky. 795, 81 S.W.2d 588; W. T. Congleton Co. v. Bradley, 259 Ky. 127, 81 S.W.2d 912; Gray v. W. T. Congleton Co., 263 Ky. 716, 93 S.W.2d 829; Miracle v. Harlan Wallins Coal Corporation, 311 Ky. 169, 223 S.W.2d 738.

On the other hand, we have not adopted the converse rule (which generally prevails) that the employee is automatically covered simply because the accident occurred on the employer's premises. See Draper v. Railway Accessories Co., 300 Ky. 597, 189 S.W.2d 934; Harlan Collieries Co. v. Shell, Ky., 239 S.W.2d 923; Harlan-Wallins Coal Corporation v. Stewart, Ky., 275 S.W.2d 912; Johnson Brothers Lumber Company v. Hood, Ky., 330 S.W.2d 929; Bickel v. Ford Motor Company, Ky., 370 S.W.2d 193. The theory of some of those cases was that the accident was not covered, even though occurring on the employer's premises, because the employee was not exposed to an "industrial hazard". Since our cases have not uniformly used this criterion (which is a rather elusive one at best), and since eminent authorities do not consider it relevant, we no longer think it should be controlling.

We are not willing, however, to accept the *boundary line* of the employer's property as the proper point at which to differentiate between liability or nonliability. We must take this position because, particularly in the coal mining industry, extensive acreage may be encompassed within the employer's property or premises and it would be unrealistic to conclude that the employee was in the course of his employment at any and all times when he was within those boundaries.

The Pennsylvania courts have taken what appears to be a fairer and more practical view of what constitutes "premises". In Young v. Hamilton Watch Co., 158 Pa.

Super. 448, 45 A.2d 261, a distinction was made between the "premises" and the "property" of the employer. It was held that where the injury did not occur on the "operating premises" of the employer, compensation would be denied.[1] The same general principle was followed in Connecticut (Flodin v. Henry & Wright Mfg. Co., 131 Conn. 244, 38 A.2d 801) and Tennessee (Bennett v. Vanderbilt University, 198 Tenn. 1, 277 S.W.2d 386).

The "operating premises" concept is somewhat related to the idea expressed by this Court in Barker v. Eblen Coal Company, Ky., 276 S.W.2d 448, where the test applied was: "work connected activity". If we interpret "work connected activity" as including "work connected place", we really reach the concept of "operating premises". See Cooper, "Workmen's Compensation—The 'Going and Coming' Rule and Its Exceptions in Kentucky", 47 Ky.L.J., pages 420, 424. (This might be considered a justifiable extension of the "industrial hazard" theory.)

The "operating premises" principle appears implicit in the following cases: Phil Hollenbach Co. v. Hollenbach, 181 Ky. 262, 204 S.W. 152, 13 A.L.R. 524; Barres v. Watterson Hotel Co., 196 Ky. 100, 244 S.W. 308; Big Elkhorn Coal Co. v. Burke, 206 Ky. 489, 267 S.W. 142; Wilson Berger Coal Co. v. Brown, 223 Ky. 183, 3 S.W.2d 199; Stearns Coal & Lumber Co. v. Smith, 231 Ky. 269, 21 S.W.2d 277; Black Mountain Corporation v. Vaughn, 280 Ky. 271, 132 S.W.2d 938; Clear Fork Coal Company v. Roberts, Ky., 279 S.W.2d 797; King v. Lexington Herald-Leader Co., Ky., 313 S.W.2d 423.

The cases of United States Steel v. Isbell, Ky., 275 S.W.2d 917, and Barker v. Eblen Coal Company, Ky., 276 S.W.2d 448, appear inconsistent with this concept.

Two cases involving injuries on a parking lot seem directly in conflict. Compensation was allowed in A. C. Lawrence Leather Co. v. Barnhill, 249 Ky. 437, 61 S.W.2d 1, and denied in Bickel v. Ford Motor Company, Ky., 370 S.W.2d 193. In the Pennsylvania case we have above cited (Young v. Hamilton Watch Co., 158 Pa. Super. 448, 45 A.2d 261) it was held that a parking lot (located on the property of the employer, though not contiguous with the work area) was *not* a part of the "operating premises". Since we reached the same conclusion in the Ford Motor Company case (where the lot was adjacent to the "operational premises"), Barnhill in effect has been overruled.

■ In our opinion the "operating premises" test is a fair one and most consistent with the trend of our decisions, and we hereby adopt it. Applying it to this case, we find that the roadway area extending at least as far as the point opposite which the employee was killed (173 feet from the drift mouth) properly should have been considered within the "operating premises" of the employer by the Board.

■ Our final question is whether the Board was justified in finding that the activity of the employee at the time of his death was such a "deviation" from the course of his employment that he was beyond the pale of coverage. It may be stated generally that the deviation should be substantial, or to put it another way, "minor interludes are immaterial". Larson's Workmen's Compensation Law, Vol. 1, section 19.63 (page 294.99).

The authority just cited lists the following insubstantial deviations which do not absolve the employer of liability: "running across the street in the course of a delivery trip to buy a little food; getting cigarettes

1. This case was followed in Moatz v. Moatz, 160 Pa.Super. 176, 50 A.2d 541; Fedorko v. Pennsylvania Electric Co., 161 Pa. Super. 279, 52 A.2d 103; and Vardzel v. Dravo Corporation, 402 Pa. 19, 165 A.2d 622. It is distinguished in Grazer v. Consolidated Vultee Aircraft Co., 161 Pa.Super. 434, 55 A.2d 538; and Shaffer v. Somerset Community Hospital, 205 Pa.Super. 419, 211 A.2d 49.

during a trip to or from work in the employer's conveyance; stopping at one's home to get a raincoat and leave some meat; crossing the road during a delivery trip to have a glass of beer at 2:00 in the afternoon; picking up two young ladies and taking them home while driving a car to test its brakes; buying a toy during spare time to take home to a child; and even picking cherries from a customer's cherry tree." For an extreme case of this character see Cavalcante v. Lockheed Electronics Co., 85 N.J.Super. 320, 204 A. 2d 621. This opinion is not to be construed as either approving or disapproving the findings above cited as examples.

On the other hand, it has been said: "If the incidents of the deviation itself are operative in producing the accident, this in itself will weigh heavily on the side of non-compensability, * * *." Larson's Workmen's Compensation Law, Vol. 1, section 19.61 (page 294.94). The following cases are illustrative: Conklin v. Industrial Transportation, Inc., 312 Mich. 250, 20 N. W.2d 179—the very act of stopping to see a personal friend causes a motor vehicle collision; Public Serv. Co. of Northern Illinois v. Industrial Comm'n, 395 Ill. 238, 69 N.E.2d 875—employee crossed dangerous railroad tracks which did not constitute a hazard on the regular route; Sun Insurance Co. v. Boyd, Fla.App., 101 So.2d 419 —employee climbed a ladder to retrieve a hammer.

A Kentucky case on the point is Colwell v. Mosley, Ky., 309 S.W.2d 350. In that case a truck driver crossed the highway to assist his brother-in-law whose automobile had stalled. While the opinion emphasizes the fact that the employee was on a "personal mission", it is apparent that the nature of the mission created the hazard which resulted in the injury.

In the present case we not only have what apparently was a personal mission unrelated to the trip home, but we also have an obviously increased hazard. (Though no one knows about this, it is entirely possible that the employee's activity at the base of the "high-wall" could have started the slide.) There is no evidence that the cave-in covered the roadway or that the employee would have been injured had he remained in or about the automobile in which he proposed to ride.

■ In connection with the increased hazard by reason of a personal mission, we think the time factor is an important consideration. To the extent that an employee is covered on the "operating premises" while going to or leaving his work, he remains in the course of his employment only for a reasonable time necessary to accomplish the "going" or "coming" process. Delay in departure itself increases the hazard. It may be said that the longer the delay, the lesser the deviation which will take the employee out of the course of his employment. Here the delay in departure plus the nature of the deviation unreasonably compounded the risks to which the employer should be subjected.

■ It is therefore our conclusion that even though coverage reasonably could be extended to the general area where the employee was killed as being part of the "operating premises", the time factor coupled with the nature of the deviation was such as to take the employee out of the course of his employment.

The judgment is affirmed.