**Kimberly HANIK, Appellant**

v.

**CHRISTOPHER & BANKS, INC.; Honorable R. Scott Borders, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

No. 2012–SC–000791–WC.

Supreme Court of Kentucky.

June 19, 2014.

Charles E. Jennings, Counsel for Appellant.

Denis S. Kline, Fogle Keller Purdy, PLLC, Counsel for Appellee.

Udell Barry Levy, Counsel for Amicus Curiae.

Opinion of the Court by Justice KELLER.

Kimberly Hanik (Hanik) appeals from an opinion by the Court of Appeals which reversed the Workers' Compensation Board (the Board) and reinstated the opinion of the Administrative Law Judge (the ALJ). On appeal, Hanik argues that the Court of Appeals erred when it concluded that the Board engaged in impermissible fact finding. Christopher & Banks, Inc., Hanik's employer, argues to the contrary. Having reviewed the record and the arguments of the parties,[1] we affirm.

## I. FACTS.

Kimberly Hanik (Hanik) was an assistant manager at Christopher & Banks, a retail clothing store located in The Summit shopping center in Louisville, Kentucky. The Summit consists of a number of buildings in a "U-shape" with a large parking lot in the middle of the U (the front lot). Christopher & Banks is located in a building on one turn of the U. It has a front door that opens onto the front lot and a back door that opens onto a smaller lot that is used for parking and deliveries (the back lot).

On January 9, 2011, Hanik parked in the back lot near the back door to Christopher & Banks. When she left work, Hanik walked to her car, put her purse on the passenger seat, and, while walking around the back of her car to the driver's side, slipped and fell on "black ice." Hanik, who injured her right shoulder, immediately reported the incident to her manager, Patricia Spence (Spence). The next day Hanik completed an Associate Injury Statement Form and Spence completed a Supervisory Injury Investigation Form and a First Report of Injury. Both Hanik and Spence indicated on their respective forms that the injury occurred in the employee parking lot.

A month after the incident, Hanik filed an Application for Resolution of Injury Claim alleging that she had suffered a work-related right shoulder injury. Christopher & Banks denied the claim arguing that Hanik's injury was not compensable because it did not occur on Christopher & Banks's operating premises. Christopher & Banks then moved to bifurcate the claim, a motion the ALJ granted, so that he could determine whether Hanik's injury was compensable before addressing issues related to extent and duration of disability.

At the outset, we note that the witnesses who were asked, testified to the following: (1) parking spaces in the front lot that are marked with yellow lines are supposed to be for parking for employees of businesses in The Summit; (2) in order to preserve

1. The Kentucky Chapter of American Federation of Labor and Congress of Industrial Organizations filed an *amicus curiae* brief, which we also reviewed and considered.

parking for customers, The Summit's management sends out a memorandum to its businesses asking that employees park in the lots behind their businesses and/or in an adjacent parking lot during the week before Christmas; (3) although customers do not usually park in the back lot, there is nothing prohibiting them from doing so; (4) employees from other businesses, primarily those who work in the adjacent nail salon, park in the back lot; and (5) with the exception of Hanik, no one knows of any regular enforcement by The Summit or Christopher & Banks of whatever parking regulations might exist.

Hanik testified that, when she was hired, the then store manager and a manager with The Summit told her to park in the back lot; therefore, she always parks there. Hanik has heard that people have gotten ticketed for parking in the wrong spot. However, Hanik admitted that other Christopher & Banks employees park in the front lot and that Spence always parks there. She also admitted that she did not have any written policy regarding employee parking, and that she did not know if there were any signs designating the back lot as reserved for employee parking.

Mary Jo Frye (Frye) testified that, when she was hired, the then manager told her that "employees should park in the back of the store." However, Frye admitted that she does not always park in the back lot. When she has to work at night, she parks in the front lot because she does not like walking to the back lot at night. Frye also testified that other Christopher & Banks employees park in the back lot but that Spence always parks in the front lot.

Spence testified that, except for during Christmas week, she does not believe any-

one told her where to park or that she ever told anyone else where to park. Some Christopher & Banks employees do park in the back lot; however, other Christopher & Banks employees park in the front lot, and Spence always parks there. Spence noted that the back lot, where Hanik was parked, is not designated as an employee parking lot; does not have any marked parking spaces; and is a loading zone. Finally, Spence testified that Christopher & Banks does not have any control over or any responsibility for maintaining any of the parking lots.

Jerry Poschinger (Poschinger) has worked as a sales clerk at Christopher & Banks for five years. She testified that she was not told where to park and that she sometimes parks in the front lot and sometimes parks in the back lot, depending on the weather.

Judy Noland (Noland) has been an assistant manager at Christopher & Bank for seven years. She testified that, except for during Christmas week, no one ever told her where to park.

Carolyn Sceiner[2] has worked as a sales associate for Christopher & Banks for two years and four months. She parks in the back lot because she does not want to get her car doors "dinged," not because she was told to do so. No one from Christopher & Banks told her where to park and she knows that employees park in both the front and back lots.

After reviewing and summarizing the preceding evidence, the ALJ found that Christopher & Banks had no control over the parking lot where Hanik fell. Furthermore, he concluded that no one from Christopher & Banks told Hanik to park in the back lot and that any directions re-

---

**2.** We note that Ms. Sceiner is also referred to as Carolyn Steiner in various documents. However, at the formal hearing, counsel for Christopher & Banks spelled her name "Sceiner;" therefore, we use that name herein.

garding parking came from The Summit, not Christopher & Banks. Based on these findings, and citing to *K–Mart Discount Stores v. Schroeder*, 623 S.W.2d 900 (Ky. 1981), *Ratliff v. Epling*, 401 S.W.2d 43 (Ky.1966), and *Pierson v. Lexington Public Library*, 987 S.W.2d 316 (Ky.1999), the ALJ determined that Hanik's injury did not occur within Christopher & Banks's operating premises and was, therefore, not compensable.

Hanik appealed to the Board, and a divided Board reversed. In doing so, the majority of the Board concluded that, even though Christopher & Banks had no control over the parking lot, it did control where its employees parked. The Board acknowledged that Christopher & Banks may not have specifically told its employees where to park but concluded that Christopher & Banks "tacitly conveyed to the employees where they were to park." The Board then found that "the evidence compel[led] a finding [Christopher & Banks] directed its employees to park in either one of two spaces, the area in the front parking lot marked with yellow lines or in the back parking lot." Based on these findings, the Board concluded that Hanik was "parked in the area designated by [Christopher & Banks]," and her injury was therefore within Christopher & Banks's operating premises. Finally, the Board found that Hanik's parking in the back lot was beneficial to Christopher & Banks because doing so did not tie up more customer-friendly parking spots in the front lot. The Chairman of the Board dissented finding that the ALJ's opinion was supported by evidence of substance and that the majority had engaged in impermissible fact finding. Christopher 8s Banks appealed to the Court of Appeals. The Court of Appeals agreed with the Chairman of the Board and reversed. Hanik has now appealed to us as a matter of right.

## II. STANDARD OF REVIEW.

The ALJ has the sole discretion to determine the quality, character, and substance of the evidence and may reject any testimony and believe or disbelieve various parts of the evidence regardless of whether it comes from the same witness or the same party's total proof. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky.1985); *Caudill v. Maloney's Discount Stores*, 560 S.W.2d 15, 16 (Ky.1977). If the party with the burden of proof fails to convince the ALJ, that party must establish on appeal that the favorable evidence was so overwhelming as to compel a favorable finding. *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky.1986). In other words, the reviewing court must determine that the ALJ's finding was "so unreasonable under the evidence that it must be viewed as erroneous as a matter of law." KRS 342.285; *Ira A. Watson Department Store v. Hamilton*, 34 S.W.3d 48, 52 (Ky.2000).

## III. ANALYSIS.

Generally, absent circumstances that do not apply herein, an employee is not entitled to workers' compensation benefits for an injury that occurs beyond the employer's operating premises. *Ratliff v. Epling*, 401 S.W.2d 43 (Ky.1966). While that seems straightforward, the ALJs, the Board, and the appellate courts of the Commonwealth have struggled with defining where to draw the boundary line of an employer's operating premises in cases involving parking lot injuries.

In *K–Mart Discount Stores v. Schroeder*, 623 S.W.2d 900 (Ky.1981), we traced the history of the development of the operating premises doctrine, noting that the boundary line may include a sidewalk open to the public but which is owned and main-

tained by the employer. *Id.* at 902, *citing Smith v. Klarer Company*, 405 S.W.2d 736 (Ky.1966). It may also include "a parking lot owned, operated, and maintained by an employer for the use of its employees." *Id., citing Harlan Appalachian Regional Hospital v. Taylor*, 424 S.W.2d 580 (Ky.1968). However, we noted that we were not prepared to draw a "bright line" because whether an area falls within an employer's operating premises must be determined on a "case by case basis." *Id.* We held that when making that determination, two factors are key: (1) whether the employer controls the area; and (2) whether the injury occurred within the area controlled by the employer. *Id.*

In *Schroeder*, K–Mart leased retail space in a large shopping center with a parking lot sufficient to hold at least 975 vehicles. K–Mart asked its employees to park in a designated portion of the lot. Schroeder worked as a sales person at K–Mart and, when she arrived at work one morning, the portion of the lot designated for employee parking was full. Therefore, Schroeder parked in another area and, as she walked toward K–Mart, she slipped and fell, injuring her ankle. *Id.* at 901. Applying the two factor test, we concluded that Schroeder's injury was not within K–Mart's operating premises because it occurred outside of the designated parking area, an area that K–Mart did not own, maintain, or control. *Id.* at 902.

We expanded the employer premises doctrine in *Pierson v. Lexington Public Library*, 987 S.W.2d 316 (Ky.1999) to include indirect as well as direct control. In *Pierson*, the library leased 144 parking spaces from an adjacent parking garage. The spaces were for the use of library patrons and employees. There were no specific spaces designated within the garage as being for the library, but employees were asked to park on the seventh

floor of the garage. Pierson was returning from lunch one day when the elevator in the garage dropped as she was exiting, causing injuries to her knee and elbow. The ALJ found that the library's operating premises included the garage and awarded benefits. The Board reversed the ALJ and the Court of Appeals affirmed the Board. *Id.* at 317–18.

This Court reversed the Court of Appeals, reiterating that the determination of what is within an employer's operating premises is dependent on "the facts and circumstances of the case.... Of particular concern in making that determination is the extent to which the employer could control the risks associated with the area where the injury occurred." *Id.* at 318 (internal citation omitted). We noted that the garage was open to the public and that the library did not own, operate, or maintain the garage. However, the library influenced Pierson's decision regarding where to park by providing free parking as part of her benefit package. Thus, the facts placed Pierson's injury somewhere between the facts present in *Schroeder* (the library had no ownership or control and no maintenance duties) and those present in *Harlan Appalachian Regional Hospital v. Taylor* (the library provided employee parking). *Id.* We held that the evidence supported the ALJ's conclusion that the garage was part of the library's operating premises because: the library was a major customer of the garage "with some degree of influence over the owner;" the library influenced Pierson's decision regarding where to park; and Pierson was taking a reasonable path from her car to her work station. Furthermore, we held that the Board and the Court of Appeals, in reversing the ALJ, had "impermissibly reweighed the evidence." *Id.*

We recently revisited the operating premises issue in *Jackson Purchase Medi-*

cal Associates v. Crossett, 412 S.W.3d 170 (Ky.2013), reh'g denied (Nov. 21, 2013). In Crossett, Jackson Purchase Medical Associates (JPMA) leased space within the Lourdes Medical Pavilion, an office complex that houses a number of medical offices. JPMA had offices in the main building, which is connected by a breezeway to a smaller building that houses an MRI facility. The entire complex is bordered by sidewalks and a large parking lot. On the date of her injury, Crossett parked in a spot "specifically marked to only be used by individuals who work at the medical complex." Id. at 171. While walking toward the main building, Crossett slipped and fell in snow that had accumulated outside the MRI building, injuring her ankle. The ALJ found that Crossett's injury occurred within JPMA's operating premises because she had parked in a designated space, and she fell in a "common area of the facility." Id. at 171–72. The Board, the Court of Appeals, and this Court affirmed.

■ In affirming the ALJ, we held that his factual findings were supported by substantial evidence and that his conclusions were supported by the law. Id. at 172. We noted that the facts in Crossett were more like those in Pierson than those in Schroeder, because Crossett had parked in a space designated for employee parking, and, like Pierson, she fell while taking a reasonable path from her car to her office.[3] We noted that this case differed from Schroeder because Schroeder, unlike Crossett, had not parked in a spot designated for employees.

■ Based on the preceding, the following factors should be considered by an ALJ when determining if a parking facility is within an employer's operating premises: (1) whether the employer, either directly or indirectly, owns, maintains, or controls the parking facility or a portion thereof; (2) whether the employer designated where in the parking facility its employees are to park; (3) whether the employee parked in the designated area; and (4) whether the employee was taking a reasonable path from his/her car to his/her work station when injured. We note that the answers to these questions require factual findings and making those findings is exclusively within the purview of the ALJ.

■ Having set forth the crucial factors to be considered, we review the ALJs findings to determine if they were supported by evidence of substance. The parties agreed that Christopher & Banks did not own the parking facilities and had no obligation to maintain those facilities. There is no evidence in the record, either by way of a lease or through testimony, that any parking spaces were specifically allocated to Christopher & Banks. Furthermore, there is no evidence that Christopher & Banks had any influence, other than what a normal tenant would have, over The Summit's maintenance of the parking facilities. Therefore, the ALJs finding that Christopher & Banks exercised no control over the maintenance of the parking facilities is supported by evidence of substance.

Hanik and Frye testified that they had been told to park in the back lot by someone from The Summit, by a Christopher & Banks manager, or by both. However, every other employee testified that, other than at Christmas time, they had received no such instructions. Spence, the manager, testified that, other than at Christmas

---

**3.** Although we did not explicitly say so, in Crossett, by adopting the "reasonable path" factor, we altered and supplanted the second Schoreder factor. Following Crossett, an employee is not required to prove that the injury occurred in an area controlled, owned or maintained, either directly or indirectly, by the employer.

time, she has never told anyone where to park. Frye admitted that she sometimes parks in the front lot. Spence testified that she always parks in the front lot, and Hanik, Sceiner, and Redel testified that they park in the back lot. However, Redel does so because she believes it is closer, and Sceiner does so because she does not want to get her car doors "dinged" by parking in the front lot. Noland testified that she usually parks in the front lot and Poschinger testified that she parks in both lots, preferring the back lot in bad weather. All who were asked, testified that customers could park in the back lot but that those who parked there were primarily employees of shops at the mall. When completing the injury report forms, both Hanik and Spence referred to the lot as the employee lot but everyone testified that there were no signs designating the back lot as an employee parking lot. Finally, aerial photographs attached to Hanik's deposition show that the area where she parked had no stripes marking parking spaces.

Based on the preceding, the ALJ found that Hanik was not told where to park and that no one at Christopher & Banks told any employee where to park. The Board concluded that the evidence compelled findings to the contrary and that the ALJ's findings were not supported by substantial evidence. We disagree. Although the ALJ could have come to the same conclusion the Board did, and we might have held differently, the ALJ was not compelled to do so by this evidence. Based on the testimony from Spence, Redel, Poschinger, Noland, and Sceiner, the ALJ could reasonably conclude, as he did, that Hanik was not told where to park and that no one at Christopher & Banks told Hanik or any employee where to park. Therefore, we agree with the Court of Appeals and the Chairman of the Board that the majority of the Board engaged in impermissible fact finding.

Having found that Christopher & Banks had no ownership of or control over the parking facilities; that Christopher & Banks had no duty to maintain the parking facilities; and that Christopher & Banks did not direct Hanik or any other employees to park in the back lot or anywhere else, the ALJ was not required to address whether Hanik's route to her car was reasonable. However, the evidence indicates that it was.

Because the ALJ's opinion is supported by evidence of substance and in keeping with the law, we need not address in detail the benefit to the employer theory the majority of the Board referred to in its opinion. However, we note that this theory has not been applied in parking lot injury cases in the Commonwealth, and we see no reason to apply it now.

Finally, we recognize the argument on behalf of the Kentucky Chapter of American Federation of Labor and Congress of Industrial Organizations that, because Hanik was placed in a position of risk by her employment, we should extend the positional risk doctrine to parking lot cases. However, we believe the case by case analysis currently in place is correct; therefore, we decline to do so.

## IV. CONCLUSION.

Based on the preceding, we agree with the Court of Appeals that the Board erroneously reversed the ALJ. Therefore, we affirm the Court of Appeals and remand this matter to the Board for reinstatement of the ALJ's opinion and order.

All sitting. MINTON, C.J.; ABRAMSON and VENTERS JJ., concur. SCOTT, J. dissents by separate opinion in which CUNNINGHAM and NOBLE, JJ., join.

SCOTT, J., Dissenting.

I must respectfully dissent from the majority's opinion because Hanik was injured in what was *undoubtedly* an employee parking lot for Christopher & Banks. How could the parking lot have been anything else? This back-of-the-building parking area only allowed access to the enclosed retail stores via locked rear doors accessible only to employees with keys. Anyone else parking there would face an exceptionally long walk around the building to get to the customer entrance. Thus, the parking area placement implicitly designated it as a place for employees to park. Moreover, Christopher & Banks had indirect control over the lot through its relationship with the Summit. Consequently, Hanik's injury occurred within her employer's "operating premises," and she is entitled to compensation.

Generally, under the "going and coming" rule, injuries that occur while an employee is on the way to or from the worksite are not compensable. *Pierson v. Lexington Pub. Library*, 987 S.W.2d 316, 318 (Ky. 1999) (citing *Harlan Collieries v. Shell*, 239 S.W.2d 923 (Ky.1951)). However, the "operating premises" exception to this rule provides that an employer is responsible for work-related injuries that occur on its entire "operating premises," and not just at the injured worker's worksite. *Id.* (citing *Ratliff v. Epling*, Ky., 401 S.W.2d 43 (1966)).

The majority lays out four factors to be considered in determining if a parking facility is within an employer's operating premises: (1) whether the employer, either directly or indirectly, owns, maintains, or controls the parking facility or a portion thereof; (2) whether the employer designated where in the parking facility its employees are to park; (3) whether the employee parked in the designated area; and (4) whether the employee was taking a reasonable path from her work station to her car when injured. While I agree with these guidelines, I cannot agree with the majority in its analysis of those factors in this case—specifically, its conclusion that Hanik's injury does not satisfy the first two factors.

First, the majority holds that Christopher & Banks had no control over the parking lot. I disagree. Christopher & Banks had indirect control over the parking area surrounding its store through the nature of its leasing arrangement with the Summit shopping center. This Court has held that indirect control of a parking area, in place of actual ownership, can be sufficient to find employer liability for an injury that occurs in that area. *Pierson v. Lexington Public Library*, 987 S.W.2d 316 (Ky.1999). In *Pierson*, the subject library was held responsible for an injury to its employee that occurred in a neighboring parking garage. The library did not own, operate, or maintain the parking garage, and the garage was used by the general public as well as the library. However, this Court found the library was liable, in part, because it leased a significant number of spaces in the parking garage, which gave it some degree of influence over the owner of the parking structure.

Likewise, here, Christopher & Banks had a leasing agreement with the Summit that gave it influence over the owner of the shopping center. It does not matter, as the majority states, that Christopher & Banks had no more influence than any other tenant of the Summit. The fact remains that the store had some degree of influence because of its status as a rent-paying tenant. Although Christopher & Banks did not have any specific number of allocated spaces for its store, it necessarily leased parking spaces for its employees and customers as a result of leasing its store space. And the store logically has

an interest in its customers and employees having safe parking available in the Summit parking lot. Therefore I cannot agree with the majority that evidence points to Christopher & Banks exercising no control whatsoever over the parking facilities at the Summit.

Second, the majority concludes that the ALJ was supported by substantial evidence in finding that Christopher & Banks never directed Hanik, or any other employee, where to park. However, to me the evidence clearly indicates that Christopher & Banks designated the back lot as parking for its employees. For instance, Hanik and another employee each testified that the previous store manager had specifically instructed them to park in the back of the store upon hiring them, and in fact, most of the Christopher & Banks employees consistently parked in the back of the store. Moreover, at the time of her injury, both Hanik and her manager referred to the back of the store as "the employee parking lot" on the injury statement forms they separately completed. Clearly Christopher & Banks knew the back lot was a parking area for its employees.

Additionally, from a logical standpoint, an employee of Christopher & Banks must park somewhere upon arriving at work. Despite the lack of an actual sign marking the back parking lot as for employees, the geography of the Summit shopping center makes it highly unlikely that anyone would ever mistake the back lot for customer parking. There is no entrance at the back of the store for customers—they would have to walk all the way around the back of the shopping center in order to get to the front doors. Indeed, as one store employee testified, the only way to even access the back parking area is through a service road, and a person must know where she is going in order to get back there. Consequently, employees and delivery truck drivers would essentially be the only ones familiar with how to get to the back lot in order to use it in the first place.

Thus, even if Christopher & Banks employees were never explicitly directed by an official sign or notice that the back lot was for employees, one wonders what other possible conclusion they could have reached about an out-of-the-way parking area referred to by their manager as "the employee parking lot." Clearly it was understood by Christopher & Banks that its employees parked in the back lot, and the store allowed and preferred them to do so—after all, it would not want its employees to take up potential customer parking in the front of the store. The store should therefore be liable when one of its employees is injured in a parking lot she was clearly preferred to park in by her employer.

In conclusion, I believe Hanik's injury meets the criteria for compensation under the operating premises exception, and is the type of injury meant to be covered by this exception. In *Warrior Coal Co. LLC v. Stroud*, 151 S.W.3d 29 (Ky.2004), this Court said of the operating premises exception:

> The theory for the exception is that coverage should apply when an injury arises from a peril that is related to the employment, regardless of whether it occurs at the actual worksite.... An injury is compensable if the worker is engaged in normal coming and going activity at the time it occurs and has access to the place where it occurs because of his employment.

*Id.* at 31. If the theory behind the exception is that coverage should apply when an injury arises from a peril related to one's employment, in an area where one would not be but for their employment, then

surely Hanik qualifies. *Id.* The only reason Hanik would have parked or even known to park in the back of the store was because of her employment at Christopher & Banks. She was leaving directly from her shift at the store when her injury occurred.

For the foregoing reasons, I dissent and would reverse the Court of Appeals and reinstate the decision of the Board.

CUNNINGHAM and NOBLE, JJ., join.