# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: APRIL 18, 2019
NOT TO BE PUBLISHED

Supreme Court of Kentucky

FINAL

2018-SC-000139-WC

DATE 5/9/19 Kim Redmon, DC

CHRISTOPHER GREGORY                                            APPELLANT


ON APPEAL FROM COURT OF APPEALS
V.                      CASE NO. 2015-CA-000721-WC
WORKERS' COMPENSATION BOARD NO. 11-WC-77648


A & G TREE SERVICE; HON. DOUGLAS W.                          APPELLEES
GOTT, ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION BOARD


**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING**

On his sixth day working for Appellee A & G Tree Service, Appellant

Christopher Gregory was seriously injured in a motor vehicle accident that

claimed the life of a co-worker riding in the same truck. Before this Court, the

two issues presented are the propriety of the Court of Appeals' opinion: (1)

affirming the Workers' Compensation Board's remand to the administrative law

judge (ALJ) for further findings regarding the extent of Gregory's occupational

disability; and (2) affirming the Board's finding that Gregory was not entitled to

enhanced benefits pursuant to Kentucky Revised Statute (KRS) 342.165(1) in

the absence of evidence of a safety violation on the part of A & G. For the

reasons stated herein, we affirm.

## RELEVANT FACTS

On August 18, 2011, Gregory was part of a four-man tree-trimming crew travelling in a pickup truck owned by their employer, A & G, and driven by crew foreman, James Coleman. The men were heading home after the workday when, according to the police report, Coleman's "disregard [of] traffic control," "improper passing" and driving "too fast for conditions" resulted in a motor vehicle accident with a school bus. As a result of his injuries, then twenty-seven-year-old Gregory was transported first to Logan Memorial Hospital and then to Vanderbilt University Medical Center, where he was a patient for approximately a month followed by another month as an inpatient at Southern Kentucky Rehabilitation Hospital in Bowling Green. He suffered multiple injuries, including a closed head injury, a collapsed lung, multiple fractures, lacerations of the spleen and liver, and a right corneal ulcer.

On review of Gregory's claim for workers' compensation benefits, the ALJ aptly noted that the primary issue was whether the injuries had left Gregory permanently or partially disabled. After reviewing the extensive medical evidence, the ALJ concluded that Gregory was entitled to temporary total disability benefits from the date of the accident until July 18, 2013, and then permanent partial disability benefits for 520 weeks beginning July 19, 2013. He assessed Gregory's whole person impairment pursuant to the AMA *Guides* at 45%. The ALJ ordered that Gregory recover medical benefits for the injuries suffered and further ordered him to undergo a vocational rehabilitation evaluation. Additionally, the ALJ determined that Gregory was not entitled to

2

the enhanced safety-violation benefits he claimed pursuant to KRS 342.165(1) because A & G committed no safety violation. Gregory maintained that Coleman smoked marijuana shortly before the drive and always drove at excessive speeds, safety issues of which A & G should have been aware and should have addressed prior to the accident. The ALJ discussed the evidence of record pertinent to the safety-violation issue and rejected Gregory's various theories for imposition of an enhanced benefit.

On appeal to the Board, Gregory challenged the ALJ's findings that he was not totally occupationally disabled and that he was not entitled to enhanced benefits due to a safety violation. The Board vacated the ALJ's finding that Gregory's injuries justify a 45% impairment rating and that he is permanently partially disabled. Specifically, the Board held that the ALJ did not adequately explain the basis for his finding that Gregory was not totally occupationally disabled as a result of his physical injuries. However, the Board emphasized that the ALJ was *not* being directed on remand to find Gregory permanently totally disabled "as we believe there is evidence in the record which would support a finding he is only permanently partially disabled." In short, the Board instructed the ALJ, as fact-finder, to articulate the evidence supporting the disability finding so that it could be properly reviewed on appeal. Because the case was being remanded to address the extent of Gregory's disability, the Board observed that the ALJ had erroneously relied on Dr. Warren Bilkey's finding that Gregory had a 4% impairment rating for his right shoulder condition since Dr. Bilkey had opined that Gregory had not

reached maximal medical improvement (MMI), a prerequisite under the controlling AMA *Guides* for assessing permanent medical impairment. The Board also held that the ALJ could not rely on Dr. Richard Eiferman's assessment of a 6% impairment for a right eye injury because the ophthalmologist did not state the impairment rating was assessed pursuant to the AMA *Guides*, as required by Kentucky law. As for the safety-violation allegation, the Board affirmed the ALJ, finding no evidence of an intentional failure on the part of A & G to comply with a statute or regulation or its own company policy regarding employee safety and motor vehicle operation and no basis for imputing the actions of an employee, Coleman, to his employer in order to establish the employer's knowledge of a safety hazard sufficient to satisfy the intent element of KRS 342.165(1).

On appeal and cross-appeal, the Court of Appeals fully affirmed the Board. The appellate court agreed that Dr. Bilkey's 4% right shoulder impairment rating could not be considered by the ALJ on remand because Gregory had not reached MMI in Dr. Bilkey's opinion. The Court of Appeals further rejected Gregory's argument that if Dr. Eiferman's 6% right eye impairment rating was to be rejected, the ALJ was compelled on remand to assess a 15% right eye impairment based on the opinions of Dr. Bilkey and Dr. Ellen Ballard. The appellate court held that the Board correctly remanded the matter to the finder of fact to reassess the whole body permanent impairment rating based on the remaining probative evidence. Finally, although differing with the Board's assessment of the factors relevant to determining whether an

4

enhanced benefit was justified due to a safety violation, the Court of Appeals reached the same ultimate conclusion that an enhanced benefit pursuant to KRS 342.165(1) was properly denied.

## ANALYSIS

I. **The Court of Appeals did not err in affirming the Board's remand to the ALJ for findings on the extent of Gregory's occupational disability.**

In reviewing the appellate court's affirmance of the Board's remand to the ALJ for findings on the extent of Gregory's occupational disability, we begin with a consideration of how the workers' compensation process is designed. A workers' compensation claimant has the burden of proving every element of his claim, *Wolf Creek Collieries v. Crum*, 673 S.W.2d 735 (Ky. App. 1984), including the extent of his disability for benefits purposes pursuant to KRS 342.730. The ALJ is the fact-finder and has sole authority to determine the quality, character and substance of the evidence. *Square D Co. v. Tipton*, 862 S.W.2d 308, 309 (Ky. 1993). When evidence is conflicting, "which evidence to believe is the exclusive province of the ALJ." *Id.* (citing *Pruitt v. Bugg Bros.*, 547 S.W.2d 123 (Ky. 1977)). On appellate review, the issue is whether substantial evidence of probative value supports the ALJ's findings. *Whittaker v. Rowland*, 998 S.W.2d 479, 481-82 (Ky. 1999).

This Court, in *Ira A. Watson Dept. Store v. Hamilton*, 34 S.W.3d 48, 51-52 (Ky. 2000), stated the following with respect to the determination of a worker's occupational disability and the ALJ's role:

5

An analysis of the factors set forth in KRS 342.0011(11)(b), (11)(c), and (34) clearly requires an individualized determination of what the worker is and is not able to do after recovering from the work injury. Consistent with *Osborne v. Johnson* [432 S.W.2d 800 (Ky. 1968)], it necessarily includes a consideration of factors such as the worker's post-injury physical, emotional, intellectual, and vocational status and how those factors interact. It also includes a consideration of the likelihood that the particular worker would be able to find work consistently under normal employment conditions. A worker's ability to do so is affected by factors such as whether the individual will be able to work dependably and whether the worker's physical restrictions will interfere with vocational capabilities. The definition of "work" clearly contemplates that a worker is not required to be homebound in order to be found to be totally occupationally disabled. *See, Osborne v. Johnson, supra,* at 803.

Although the Act underwent extensive revision in 1996, the ALJ remains in the role of the fact-finder. KRS 342.285(1). *It is among the functions of the ALJ to translate the lay and medical evidence into a finding of occupational disability.*

(Emphasis supplied.) Thus, as the fact-finder, the ALJ is charged with making the disability determination.

Here, the Board found that the ALJ provided "ample explanation" for his determination that Gregory's psychological injury was not occupationally disabling but did not explain the basis "for the finding the effects of the physical injuries did not cause Gregory to be totally occupationally disabled." Because the Board was unable to determine the basis for the ALJ's conclusion that Gregory was permanently partially disabled, remand was ordered. The Board tersely stated: "Our function is not to engage in fact-finding. That is the ALJ's task."

We find no error in the Board's decision to remand and the ensuing affirmance by the Court of Appeals. An ALJ must do more than summarize the

6

evidence. In *Ira Watson* we observed that the ALJ must "translate the lay and medical evidence into a finding of occupational disability." *Id.* This denotes an analytical function wherein the ALJ identifies the evidence that is persuasive and leads to the ultimate conclusion. As the Board noted in this case, citing *Kentland Elkhorn Coal Corp. v. Yates*, 743 S.W.2d 47 (Ky. App. 1988), "[p]arties are entitled to findings sufficient to inform them of the basis for the ALJ's decision to allow for meaningful review." Given this requirement, this matter was properly remanded to the ALJ for additional findings on the extent of Gregory's disability.

As noted, the Board specifically rejected the ALJ's reliance on the 4% impairment that Dr. Bilkey found for Gregory's right shoulder condition. In KRS 342.0011(35), a permanent impairment rating is defined as the "percentage of whole body impairment caused by the injury . . . as determined by the 'Guides to the Evaluation of Permanent Impairment.'" KRS 342.0011(37) clarifies that the American Medical Association's fifth edition of the "Guides to the Evaluation of Permanent Impairment" is controlling. As the Board notes, pursuant to the AMA *Guides*, Chapter 1.2, "[a] medical impairment is considered permanent when it has reached maximal medical improvement (MMI), meaning it is well stabilized and unlikely to change substantially in the next year with or without medical treatment." Dr. Bilkey opined that Gregory had not reached MMI with respect to the shoulder injury but nonetheless assessed a permanent impairment rating. As the Board further noted, Dr. Bilkey issued a subsequent report that also did not state

7

that Gregory had reached MMI yet reiterated the 4% rating for the shoulder. Without a determination that Gregory had reached MMI for this injury, Dr. Bilkey's 4% impairment rating was properly rejected by the Board.

The other specific evidence addressed by the Board and at issue on appeal is Dr. Eiferman's assessment of a 6% impairment for Gregory's right eye injury. The Board cited *Jones v. Brasch-Barry General Contractors*, 189 S.W.3d 149, 154 (Ky. App. 2006), for its legal conclusion that "an ALJ may not give credence to an opinion of a physician assigning a permanent impairment rating that is not based upon the AMA *Guides*." Finding no reference to the AMA *Guides* in Dr. Eiferman's letter, the Board directed the ALJ to disregard the impairment rating therein on remand. We find no error in this determination nor do we believe the Board erred in not directing the ALJ that he was compelled by other evidence to find a 15% right eye permanent impairment on remand. As the Court of Appeals observed, the ALJ is reconsidering the whole-body impairment rating on remand based on the probative evidence of record and he is properly charged with making the factual determination regarding the right eye injury.

In sum, the Court of Appeals properly affirmed the Board's remand of this matter to the ALJ for further findings regarding the extent of Gregory's occupational disability. Similarly, the appellate court properly affirmed the Board's determinations regarding Dr. Bilkey's right shoulder and Dr. Eiferman's right eye impairment ratings. No error being found, we affirm the remand for further proceedings on the extent of Gregory's disability.

## II. The ALJ, Board and appellate court all properly concluded that the evidence of record does not support an enhanced benefit pursuant to KRS 342.165(1).

KRS 342.165(1) provides in relevant part:

> If an accident is caused in any degree by the intentional failure of the employer to comply with any specific statute or lawful administrative regulation made thereunder, communicated to the employer and relative to installation or maintenance of safety appliances or methods, the compensation for which the employer would otherwise have been liable under this chapter shall be increased thirty percent (30%) in the amount of each payment.

In conjunction with this statute providing for enhanced benefits in the event of a safety violation, we also consider KRS 338.031(1) which provides:

> (1) Each employer:
> (a) Shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees;
> (b) Shall comply with occupational safety and health standards promulgated under this chapter.

This statute is often referred to as the general duty clause. The Court of Appeals in *Lexington-Fayette Urban Co. Government v. Offutt*, 11 S.W.3d 598, 599 (Ky. App. 2000), articulated a four-part test for determining whether a violation of KRS 338.031(1) has occurred: "(1) [a] condition or activity in the workplace presented a hazard to employees; (2)[t]he cited employer or employer's industry recognized the hazard; (3)[t]he hazard was likely to cause death or serious physical harm; and (4)[a] feasible means existed to eliminate or materially reduce the hazard."

In this case, Gregory first argued, and the ALJ properly rejected, the proposition that A & G could be held liable under KRS 342.165(1) for enhanced

9

benefits because Coleman's reckless actions (smoking marijuana and driving fast) were the employer's actions given that Coleman was Gregory's supervisor. The statute does not allow for the imposition of enhanced liability against the employer for a single reckless act of an employee.

Next, Gregory argued that A & G was on notice that Coleman used marijuana and drove unsafely. The ALJ heard testimony from the owner of A & G; the coordinator of A & G's transportation and human resources departments; and A & G's safety coordinator. None of these three individuals had prior knowledge of Coleman smoking marijuana or driving recklessly. The safety coordinator noted that Coleman had taken and passed two random drug tests. The human resources coordinator testified that the company obtains a driving history record on its employees annually and as a result was aware of two speeding tickets Gregory received nineteen months apart in 2009 and 2010 and a 2002 speeding violation. These violations raised no "red flags." Similarly, A & G's owner had no knowledge of any issues Coleman had with either marijuana or unsafe driving. The ALJ expressly rejected Gregory's argument that better oversight by A & G would have prevented the accident, noting that even if that were true it would reflect negligence not an intentional violation of safety standards.

Turning to the *Offutt* four-part test, the ALJ emphasized that the second element, awareness on the part of the employer of a safety hazard, simply was not present. Coleman's driving and drug habits may have posed a hazard but it was not one of which A & G was or reasonably should have been aware.

10

On appeal, the Board found no evidence of A & G's intentional violation of any controlling statute or regulation and no evidence of failure to follow A & G's own company policies. Like the ALJ, the Board found all four parts of the *Offutt* test were not met, primarily because the record contained no evidence that A & G was aware of any safety hazard presented by Coleman. Without such evidence, no violation existed on which to premise an enhanced benefit pursuant to KRS 342.165(1).

The Court of Appeals affirmed but conducted the *Offutt* analysis differently. Unlike the ALJ and the Board which focused on the hazard as *Coleman's unsafe driving habits,* the appellate court held that the first factor was met because A & G provided a vehicle to Coleman and "it is axiomatic that unsafe driving can be hazardous." Next, that court referenced the A & G employee handbook to establish that the employer recognized the hazards generally from drug use and negligent use of a vehicle. Third, the court reasoned that unsafe driving poses the risk of death or serious physical harm as evidenced by the accident in which Gregory was seriously injured and a co-worker was killed. The Court of Appeals, however, held that the fourth factor, *i.e.,* a feasible means to eliminate or reduce the hazard, was not present because A & G had suitable policies and controls in place for its employees but the hazard posed by Coleman was unknown. The employer could not eliminate or reduce a hazard of which it was unaware. Although we may question the Court of Appeals' approach in defining the hazard at issue in such a broad

11

brush manner (unsafe driving vs. Coleman's unsafe driving habits), the court reached the correct legal conclusion.

We agree with the ALJ, Board and the Court of Appeals that the record contains no evidence of the employer's intentional violation of a statute or regulation or of its own safety policies. As we recently stated in *Groce v. VanMeter Contracting, Inc.,* "[i]f the party with the burden of proof fails to convince the ALJ of the safety violation, that party must then establish on appeal that the evidence in their favor was so overwhelming as to compel a favorable finding." 539 S.W.3d 677, 684 (Ky. 2018) (citing *Hanik v. Christopher & Banks, Inc.,* 434 S.W.3d 20, 23 (Ky. 2014)). In this case, that high bar is not met. Gregory had no evidence regarding this safety-violation issue other than his own testimony that Coleman drove recklessly "all the time," an observation the ALJ found questionable given Gregory had only worked at A & G with Coleman for six days. Gregory also testified that the co-worker who died was planning to transfer crews the following week due to concerns about Coleman's driving, but admitted that A & G had no knowledge of this alleged fact. A & G's owner, who had known the deceased employee for many years, testified that they communicated directly with each other but he never received any comment or request by that employee regarding Coleman's driving or transferring crews.

In sum, the ALJ properly disallowed an enhanced benefit pursuant to KRS 342.165(1) because Gregory failed to meet his burden of proving an intentional failure on the part of A & G to observe safety statutes, regulations or internal

12

policies. However the issue is framed for purposes of the *Offutt* analysis of the employer's failure to meet the general duty clause, KRS 338.031(1), Gregory failed to establish all four mandatory elements.

## CONCLUSION

Having reviewed the record and applicable law, we affirm the Court of Appeals' opinion affirming the Workers' Compensation Board's decision. This matter is remanded to the ALJ for further proceedings in accordance with the directions from the Board and this Court.

Minton, C.J.; Hughes, Keller, Lambert, VanMeter, and Wright, JJ., sitting. All concur. Buckingham, J., not sitting.

COUNSEL FOR APPELLANT:

Stephanie Nicole Wolfinbarger
COTTON WOLFINBARGER & ASSOCIATES PLLC

COUNSEL FOR APPELLEE, A & G
TREE SERVICE:

Rodney Joseph Mayer
U'SELLIS MAYER & ASSOCIATES