RENDERED:  DECEMBER 3, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0684-WC

PILGRIM'S PRIDE CORPORATION                                   APPELLANT


PETITION FOR REVIEW OF A DECISION
v.          OF THE WORKERS' COMPENSATION BOARD
ACTION NOS. WC-2019-01490 AND WC-2019-53330


PATSY HERNDON; HONORABLE
TONYA CLEMMONS,
ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION
BOARD                                                          APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, CETRULO, AND JONES, JUDGES.

CETRULO, JUDGE:  Pilgrim's Pride ("Employer") appeals an opinion of the

Workers' Compensation Board ("the Board") which reversed and remanded the

opinion and order of the Administrative Law Judge ("the ALJ") dismissing Patsy

Herndon's workers' compensation claims for injuries sustained on November 11, 2019, and November 13, 2019.[1]  We affirm the Board.

Herndon worked for Employer, a poultry processing facility, as a main inspector helper for approximately twenty-five years.  She worked the night shift and was not permitted to clock in until 9:07 p.m.  However, for approximately five years up to and including 2019, Herndon arrived for work any time from 7:00-7:30 p.m.  She was never instructed by a supervisor not to arrive in this timeframe, and most workers arrived thirty minutes prior to the start of the night shift.  Herndon arrived early to eat supper with a fellow employee who worked an earlier shift.

Upon arrival to work, Herndon was required to pass through a secured entrance into Employer's parking lot.  After exiting her vehicle, Herndon walked across the parking lot, then swiped her employee badge at a set of turnstiles to enter the building.  Herndon testified that she would then put on her work clothes and gear prior to eating her meal.  On the evening of November 11, 2019, Herndon arrived for her shift at approximately 7:10 p.m.  The parking lot was covered by ice and snow.  She parked her vehicle, exited, and walked around to the passenger's side to retrieve a bag containing her work gear when she fell.  Herndon got up,

---

[1] Herndon had two separate claims based on the date of each incident.  The claims were consolidated by the ALJ.

opened the vehicle's door, and fell again on a piece of waxed cardboard that was covered by the snow and ice. Upon falling the second time, she landed on her left foot and heard a pop in her left knee. Herndon managed to walk into the facility and notified a supervisor of the falls. She was seen by Employer's medical staff and placed on light duty in the supply room for the duration of her shift. Herndon testified in her deposition that she experienced pain and difficulty walking after the falls and for the remainder of her shift.

The next day, Herndon arrived early for the night shift and worked in the supply room on light duty. On November 13, 2019, she arrived at her usual early time. Herndon testified in her deposition that as she was walking across the parking lot, approaching the turnstiles just outside of the facility, her legs went numb and she fell. Two employees, who did not see her fall, but heard her asking for help, assisted her to a nearby bench and retrieved a supervisor. Herndon requested an ambulance and was transported to the hospital where X-rays were performed. She was ultimately diagnosed with a left leg fracture and underwent surgery. After surgery, she was admitted to a skilled nursing and rehabilitation facility for assistance and therapy. She was discharged from the facility on March 1, 2020.

Herndon sought workers' compensation in the form of total temporary disability, medical, and credit for short-term disability benefits. Her claim was

denied by the ALJ. On appeal, the Board reversed and remanded the ALJ's decision. Employer appealed. Further facts will be developed as necessary.

Generally, the ALJ is the sole fact-finder in all workers' compensation claims. "KRS[2] 342.285 designates the ALJ as finder of fact, and has been construed to mean that the fact-finder has the sole discretion to determine the quality, character, weight, credibility, and substance of the evidence, and to draw reasonable inferences from the evidence." *Bowerman v. Black Equipment Co.*, 297 S.W.3d 858, 866 (Ky. App. 2009). As the claimant, Herndon had the burden of proving every element of her claim. *Wetherby v. Amazon.com*, 580 S.W.3d 521, 526 (Ky. 2019) (citation omitted). When a claim is denied by the ALJ, on appeal to the Board, the issue is whether substantial evidence supported the ALJ's findings. *Id.* "Substantial evidence means evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Smyzer v. B. F. Goodrich Chemical Co.*, 474 S.W.2d 367, 369 (Ky. 1971).

However, the facts as stated herein are largely uncontested. Rather, we must review whether the ALJ correctly applied the law to the facts. "As a reviewing court, we are bound neither by an ALJ's decisions on questions of law or an ALJ's interpretation and application of the law to the facts. In either case,

---

[2] Kentucky Revised Statutes.

our standard of review is *de novo*." *Ford Motor Co. v. Jobe*, 544 S.W.3d 628, 631 (Ky. 2018) (citing *Bowerman*, 297 S.W.3d at 866).

We are unpersuaded by Employer's argument that the Board substituted its own findings for that of the ALJ. The narrow issue, as framed by the ALJ and the Board, is whether Herndon's injuries on November 11 and 13, 2019, arose out of and in the course of her employment. This is a question of law and, accordingly, our review is *de novo.* We agree with the Board that Herndon's injuries did arise out of and in the course of her employment.

The coming and going rule is applicable in the instant action. The ALJ noted the rule in workers' compensation cases states

> [t]he general rule is that injuries[3] sustained by workers when they are going to or returning from the place where they regularly perform the duties connected with their employment are not deemed to arise out of and in the course of the employment as the hazards ordinarily encountered in such journeys are not incident to the

---

[3] KRS 342.0011(1) defines "injury" in workers' compensation claims as

> any work-related traumatic event or series of traumatic events, including cumulative trauma, arising out of and in the course of employment which is the proximate cause producing a harmful change in the human organism evidenced by objective medical findings. "Injury" does not include the effects of the natural aging process, and does not include any communicable disease unless the risk of contracting the disease is increased by the nature of the employment. "Injury" when used generally, unless the context indicates otherwise, shall include an occupational disease and damage to a prosthetic appliance, but shall not include a psychological, psychiatric, or stress-related change in the human organism, unless it is a direct result of a physical injury[.]

employer's business.

*Receveur Const. Co./Realm, Inc. v. Rogers*, 958 S.W.2d 18, 20 (Ky. 1997) (citation omitted).

The ALJ also noted the exception to the coming and going rule, which is that injuries are compensable if they occur on the employer's operating premises. *Ratliff v. Epling*, 401 S.W.2d 43 (Ky. 1966). Briefly, in *Ratliff*, a coal mine employee (Employee) asked a fellow worker for a ride home when their shift ended. However, the vehicle would not start, so the fellow worker left to find assistance. While he was gone, Employee decided to exit the vehicle and collect coal for his own personal use. While doing so, an embankment caved in and crushed Employee, resulting in his death. This happened approximately one half hour after Employee's shift had ended. Kentucky's then-highest Court, in adopting the operating premises rule, also found that Ratliff was not entitled to compensation in the form of death benefits because, even though the accident occurred on employer's operating premises, Employee was on a "personal mission" when he decided to exit the vehicle and collect coal for his personal use. The Court also instructed that time was a factor to consider and that an employee

> remains in the course of his employment only for a
> reasonable time necessary to accomplish the 'going' or
> 'coming' process. Delay in departure itself increases the
> hazard. It may be said that the longer the delay, the
> lesser the deviation which will take the employee out of
> the course of his employment. Here the delay in

> departure plus the nature of the deviation unreasonably
> compounded the risks to which the employer should be
> subjected.

*Id.* at 46.

Looking to *Ratliff*, the ALJ relied on the fact that Herndon reported to work two hours before she was able to start her shift and made a conclusion of law that such an early arrival was unreasonable. Thus, the ALJ concluded the incidents on November 11 and 13, 2019, did not constitute an injury as defined in KRS 342.0011 because they were not in the course of Herndon's employment, stating

> [t]he ALJ is not convinced that an unpaid, pre-shift meal
> approximately two hours prior to the beginning of a work
> shift is work-related or incidental to [Herndon's] work.
> The evidence does not establish that [Herndon] was
> serving [Employer's] interests or an employer
> requirement that arriving early to have a pre-shift meal
> was an activity that was in the course of her employment.

On appeal, the Board narrowly focused on the precise time and nature of Herndon's accidents and concluded that she was engaged in the normal activity of going to work and was in the course and scope of her employment at the time of both falls, despite the fact she arrived approximately two hours early for her shift. The Board concluded the ALJ misapplied the law to the facts, not that the ALJ's findings were not supported by evidence. We agree.

The Kentucky Supreme Court, in offering further clarification of *Ratliff*, has instructed

[a]s a general rule, once the employee of a contractor, whether independent or subcontractor, has crossed the threshold onto the private property upon which the job site is located where his employer is providing services, he should be considered exposed to the risks because of his employment and entitled to coverage under the "on premises" modification of the "going and coming" rule. However, we recognize that the location or position where the accident occurs is just one factor to be considered in deciding whether a person who has not yet reported to work should be covered by the workers' compensation law. While the employee is still in a "going and coming" status the *Ratliff* case requires the cause of the injury to also be considered, and this may outweigh the importance of the place of the injury if the cause of the injury represents a significant deviation from normal activity involved in going and coming.

*Hayes v. Gibson Hart Co.*, 789 S.W.2d 775, 779 (Ky. 1990). In sum, when considering the coming and going rule, "the coverage decision must be based upon the quantum of aggregate facts rather than the existence or nonexistence of any particular factor." *Id.* at 777 (internal quotation marks and citations omitted).

It is undisputed that the parking lot where the incidents occurred constitutes Employer's operating premises.[4] It is also undisputed that Herndon

---

[4] In clarifying the operating premises rule in relation to employer-controlled parking lots, the Kentucky Supreme Court has held

> if an employer provides or maintains a parking lot or other premises for the convenience of its employees, and an employee, while on said premises, sustains a work-connected injury, then the employer is responsible to the employee for workers' compensation benefits. Two factors must be present to fix liability on the employer. First of all, the employer must control the area, and second, a work-related injury must have been sustained on the

suffered three falls on Employer's operating premises. She was at her vehicle gathering her work gear when she suffered two falls on November 11, 2019, and was walking across the parking lot to the facility when she fell on November 13, 2019. She was scheduled to work her regular night shift on both occasions and we agree with the Board that she was engaged in normal employment activity when the falls occurred.

Employer attempts to persuade this Court to engage in speculative "what-if" scenarios, arguing that, had Herndon arrived two hours later on November 11, 2019, perhaps the parking space she had chosen would have been occupied, the cardboard box removed, or there would have been a change in the snow and ice levels in the parking lot.[5] We do acknowledge that our analysis would likely be different if Herndon was injured while eating her early supper in the facility, or if she had shown up on an evening when she was not scheduled to work simply to dine with her friend. However, neither of those scenarios, nor those presented by Employer, are applicable to the facts of November 11 and 13, 2019. Herndon was on Employer's operating premises and engaged in normal

___

area. What we are saying is that "operating premises" constitute a part of the work area, and an employee, under those conditions, receiving a work-related injury is in a "work connected activity."

*K-Mart Discount Stores v. Schroeder*, 623 S.W.2d 900, 902 (Ky. 1981).

[5] *See* p. 18 of Employer's petition for review.

coming and going activity when she fell on both dates. She was not engaged in a "personal mission" at the times the falls occurred. The Board did not err in considering the quantum of aggregate facts rather than relying upon the sole factor of time.

For the reasons stated herein, the decision of the Board is affirmed.

ALL CONCUR.


BRIEF FOR APPELLANT:

James G. Fogle
Louisville, Kentucky

BRIEF FOR APPELLEE:

David Troutman
Mark Edwards
Paducah, Kentucky